## REMOVAL CASES.

## MEYER *v.* CONSTRUCTION COMPANY ; CONSTRUCTION COM-PANY *v.* MEYER ; RAILROAD COMPANY *v.* MEYER.

1. The provision in the first clause of the second section of the act entitled " An Act to determine the jurisdiction of circuit courts of the United States, and to regulate the removal of causes from State courts, and for other purposes," approved March 3, 1875 (18 Stat., part 3, 470), " that any suit of a civil nature, at law or in equity, now pending . . . in any State court, where the matter in dispute exceeds, exclusive of costs, the sum or value of $500, . . . in which there shall be a controversy between citizens of different States, . . . either party may remove said suit into the Circuit Court of the United States for the proper district," construed, and *held* to mean that when the controversy about which a suit in the State court is brought is between citizens of one or more States on one side, and citizens of other States on the other side, either party to the controversy may remove the suit to the Circuit Court without regard to the position they occupy in the pleadings as plaintiffs or defendants. For the purposes of a removal, the matter in dispute may be ascertained, and according to the facts the parties to the suit arranged on opposite sides of that dispute. If in such an arrangement it appears that those on one side, being all citizens of different States from those on the other, desire a removal, the suit may be removed.

2. Until a case requiring it arises, the court refrains from expressing an opinion upon the second clause of said section.

3. The petition for removal (*infra*, p. 463), held to be sufficient in form.

4. An application made before trial for the removal to the Circuit Court of a cause pending in a State court at the passage of said act of March 3, 1875, was in time if made at the first term of the court thereafter.

5. In order to bar the right of removal, it must appear that the trial in the State court was actually in progress in the orderly course of proceeding when the application was made.

6. The ruling in *Insurance Company* v. *Dunn* (19 Wall. 214), that a party who failing in his efforts to obtain a removal of a suit is forced to trial loses none of his rights by defending against the action, reaffirmed.

7. Under the laws of Iowa, a mechanic's lien for work done under a contract takes precedence of all incumbrances-put on the property by mortgage or otherwise, after the work was commenced.

8. A statement in a contract between a railroad company and a construction company that the former would pay the latter out of a certain fund, — the subscription of a particular county along the road — is not such a taking by the latter company of a collateral security as to vitiate its lien.

THE first case is here in error to the Supreme Court of the State of Iowa.

The remaining cases are appeals from the Circuit Court of the United States for the District of Iowa.

These cases present the following facts: On the 6th of August,'1870, the Delaware and St. Paul Railroad Company, an Iowa corporation, contracted with the Delaware Railroad Construction Company, also an Iowa corporation, for the construction of that part of its railroad lying in Delaware County, Iowa. The contract contained full specifications of the work to be performed and the prices to be paid, and concluded as follows: —

" The prices above specified are to be in full compensation for all materials and labor required to put the same into the work herein contracted for, and complete the same in all respects as provided in this contract. In order to enable the contractor to prosecute the work advantageously, the said engineer shall make an estimate from time to time, not oftener than once per month, as the work progresses, both on work done and materials delivered on the line of said railroad. The said party of the second part will pay in current money eighty per cent of the amount of said estimate; twenty (20) per cent of the estimates, as they are made to the party of the first part, may be retained by the party of the second part as damages in case of a forfeiture of this contract; which said (20) twenty per cent, together with the whole amount of this contract, according to the terms thereof, and on the estimate of the engineer, shall be paid to the party of the first part within thirty days after all the work herein contracted for is completed and accepted by the engineer. ' Qualified below.'

" The above payments on estimates shall be made every thirty (30) days, at the office of the president of said Davenport and St. Paul Railroad Company, in Davenport. The Davenport and St. Paul Railroad Company may stop all work at any time, without payment of damages, by giving thirty days' notice.

" Whenever five consecutive miles of work from the south line of Delaware County are completed by the party of the first part, and accepted by the party of the second part, the party of the second part shall pay the full amount of the contract price for said work on said five miles within thirty days after said work is accepted, without the deduction of said twenty per cent, and for every additional five consecutive miles of the south end of the work completed by said first party, said second party shall pay in like manner within

thirty days after the same has been accepted, and so on through the county from south to north.

"Signed this sixth day of August, A.D. 1870.

"R. EDDY, *Pres.*
"J. M. BRAYTON, *Sec'y.*
"F. B. DOOLITTLE, *Treas.*
"*Board of Directors of the Delaware Railroad Construction Company.*

"All the money for the work hereinbefore specified to be paid by the citizens of Delaware County.

"H. PRICE,
"*Pres't Dav. and St. Paul R. R. Co.*"

The work under this contract was commenced Sept. 29, 1870, and completed Oct. 31, 1872. On the 20th of December, 1872, the construction company filed in the office of the clerk of the District Court of Delaware County the statements and accounts required by the laws of Iowa to secure a mechanic's lien on the part of the railroad which had thus been completed. The balance claimed to be due was $71,165.58.

On the 4th of June, 1872, there was filed for record in the office of the recorder of Delaware County a mortgage, bearing date July 1, 1871, but acknowledged May 16, 1872, whereby the railroad company conveyed its entire line of railroad, including with the rest that built by the construction company, to William Dennison, a citizen of the State of Ohio, and J. Edgar Thompson, a citizen of the State of Pennsylvania, as trustees, to secure the payment of a proposed issue of bonds, amounting in the aggregate to six millions of dollars. Provision was made for the appointment of a new trustee in case of the death of either of those named in the deed.

On the 15th of January, 1874, the construction company commenced a suit in equity in the Circuit Court for the county of Delaware, a State court to enforce its mechanic's lien, and in the petition priority was claimed for this lien over that of the mortgage. In this suit, the railroad company, Thompson and Dennison, as trustees, the Davenport Railway Construction Company, an Iowa corporation, and Lucius Howard, were named as defendants, but process was served only on the railroad company. On the 28th of January, the railroad company appeared and filed an answer, substantially admitting the allegations in

the petition except as to the amount due.    Credits were claimed, however, beyond those acknowledged by the construction company, and a reference was asked for a statement of the accounts. To this answer a reply was filed January 30.    On the 6th of February the construction company and the railroad company appeared by their respective counsel, and a motion by the railroad company for a reference being overruled, the court proceeded to receive evidence in the cause.    In this state of the case, it was agreed between the parties then appearing, to wit, the construction company and the railroad company, as follows : —

" The case as to these parties is referred to Henry Harger, Esq., who appears in open court and accepts the appointment of referee, with power to examine witnesses, books, and papers and accounts, and upon the findings of said referee being reported to the judge of this court, a judgment, by agreement of said parties in open court, is to be entered for the amount due, and a decree for a mechanic's lien to be made establishing such lien, the hearing to commence on Monday morning, Feb. 9, 1874, at nine o'clock A.M., at the office of said Harger in Delhi, Iowa, and to continue from day to day until completed.

" And by said agreement of said parties the judgment is to be entered as of the last day of this January Term, 1874, of this court, and the cause is by order of court continued as to all the defendants except said Davenport and St. Paul Railroad Company."

The referee proceeded to the hearing and presented his report, which was approved by the circuit judge on the 13th of February, and the judge at the same time directed the clerk to enter a judgment in accordance with the finding as of February 6, the last day of the preceding term.    On the 14th of February the referee filed his report and the indorsement of the judge thereon with the clerk, and the clerk entered a judgment in favor of the construction company for $51,930.54, with interest at six per cent from February 6, and establishing a lien upon the railroad in the county to secure the payment.    A special execution for the sale of the property in accordance with this judgment was also ordered.    On the 17th of February, such an execution was issued, and on the 4th of May the property was sold by the sheriff to the construction company for $53,000,

and a conveyance made to its treasurer in trust. Afterwards the property was conveyed by the treasurer to the Delaware County Railroad Company, an Iowa corporation created and organized for the purpose of taking the conveyance and holding the property. This new corporation was composed of substantially the same stockholders as the construction company.

On the 6th of April, 1874, an affidavit was made and filed in the suit by the attorney of the construction company, to the effect " that personal service of original notice in said suit cannot be` made upon the defendants, J. Edgar Thompson and William Dennison, trustees of certain bondholders of said railroad, within the State of Iowa, and they are non-residents of said State of Iowa." The next day a supplemental petition was filed in the cause, as follows : —

" And now comes the plaintiff in this suit and states that since the commencement of this suit, to wit, on the sixth day of February, A.D. 1874, a decree has been rendered by this court against the Davenport and St. Paul Railroad Company, a copy of said decree being hereto annexed, and made a part of this supplemental petition, by which judgment was rendered against said railroad company in favor of said plaintiff for the sum of $51,930.54, besides costs of suit, and the mechanic's lien claimed in the original petition in this suit was established as claimed in said petition.

" Wherefore plaintiff asks that the remaining defendants be foreclosed of all rights of redemption of the property described in said original petition ; that said lien be established against the remaining defendants in said suit ; that it be declared paramount to all claims of said defendant, and that plaintiff have such other and further relief as may be equitable."

Notice to these defendants of the pendency of the original and supplemental petitions was published in the " Delhi Monitor," a newspaper published weekly at Delhi, Delaware County, four successive weeks, commencing April 9 and ending April 30, requiring them to appear and answer before the 19th of May then next, or default would be entered against them, and judgment and decree rendered as prayed for. On the 22d of May, proof of the publication of this notice having been made, a decree was entered on default, granting the relief asked for, and foreclosing the defendants, Thompson and Dennison,

"from all right of redemption of, in, or to the said property, and every part thereof," and declaring that the rights of the construction company were "superior and paramount to any and all claims or rights of said defendants to the same or any part thereof." At the same time the cause was dismissed as to the defendant Lucius Howard. The Davenport Railway Construction Company never appeared in the suit, and it nowhere appears what its interest in the controversy was.

Thompson, one of the trustees, died May 23, the next day after this decree was entered, and on the 26th of January, 1875, the following proceedings were had in the cause on the application of Dennison : —

"Now, on this 26th day of January, 1875, comes William Dennison, the surviving trustee for certain bondholders of the Davenport and St. Paul Railroad Company, who were defendants in the above-entitled cause, and files with the clerk of this court a motion for a new trial in this cause, on behalf of the said William Dennison, surviving trustee as aforesaid, and brings into court a bond for security for costs of retrial of said cause, as required by the statute in such cases made and provided, and offers to be filed the answer of the said surviving trustee, William Dennison. Whereupon, it appearing to the court that the service upon the said surviving trustee was by publication only, and that he and those whom he represents are entitled to a new trial under the law ; and it further appearing to the court that the said surviving trustee has furnished security for the costs of new trial herein satisfactory to the said plaintiff, it is ordered by the court that a new trial in this cause be granted to the said surviving trustee, William Dennison, that the answer offered by the said defendant be filed, and that this cause stand continued to the next term of this court."

On the 2d of February, the construction company filed a motion in the cause, to strike the answer of Dennison from the files because it was not verified. This motion was granted at the next term of the court, on the 17th of May, and the construction company thereupon asked for a judgment by default, but on the 19th of May an amended answer was filed on leave, in which a defence was set up against the priority of the lien of the construction company. On the same day, Lewis H. Meyer, a citizen of the State of New York, claiming to have been

appointed a trustee under the mortgage in the place of Thompson, moved the court to be substituted for Thompson as a party to the suit.    On the same day, and during the regular term of the court, Meyer and Dennison filed with the clerk a petition as follows : —

"*In the Circuit Court of Delaware County, Iowa.*

"THE DELAWARE RAILROAD CONSTRUCTION CO. ⎫
*v.*                                        ⎬
LEWIS H. MEYER and WILLIAM DENNISON, Trustees. ⎭

"Now come your petitioners, Lewis H. Meyer and Wm. Dennison, trustees, and state : —

"That the Delaware Railroad Construction Company and all persons who have come in as intervenors in the above entitled cause are citizens of the State of Iowa; that Lewis H. Meyer is a citizen of the State of New York, and William Dennison a citizen of the State of Ohio.

"That they have reason to believe and do believe that from prejudice or local influence they will not be able to secure justice, by reason of such prejudice or local influence.

"That said cause can be fully and finally determined in the United States Circuit Court for the District of Iowa.

"That the amount in controversy in said cause amounts to more than the sum of five hundred dollars, exclusive of costs, and they make and file in this court a bond, with good and sufficient security, for their entering in such Circuit Court, on the first day of its next session, a copy of the records in said suit, and for paying all costs that may be awarded by said Circuit Court, if said court shall hold that said suit shall be wrongfully or improperly transferred thereto, and also for the appearing and entering special bail in such suit, if special bail was originally requisite therein, and they pray of said court to accept said petition and bond, and order the transfer of the said cause to the said Circuit Court of the United States."

This petition was not signed or sworn to, but was accompanied by a bond as follows : —

"*In the Circuit Court of Delaware County, Iowa.*

"Know all men by these presents, that we, Lewis H. Meyer and William Dennison, principals, and John E. Henry and Charles Whitaker, as sureties, are held and firmly bound unto the Delaware Railroad Construction Company, and all other persons whom it may

concern, in the penal sum of one thousand dollars, to which payment we bind ourselves and each of us by these presents. Given under our hands this fifteenth day of May, 1875.

" The conditions of this obligation are these: the said Lewis H. Meyer and William Dennison have applied to the Circuit Court of said county to remove a certain cause pending in said court, wherein the Delaware Railroad Construction Company are plaintiffs, and the said Lewis H. Meyer, trustee, successor to John Edgar Thompson, and William Dennison, trustees, and many others are defendants, from the said Circuit Court to the Circuit Court of the United States for the District of Iowa:

" Now, if said Meyer and Dennison shall enter in the said Circuit Court of the United States for the District of Iowa, on the first day of the next term thereof, a copy of the record of said suit, and shall pay all the costs that may accrue or be awarded by said Circuit Court if it shall hold that said suit was wrongfully or improperly removed thereto, and shall also appear and enter special bail in said Circuit Court in said suit if special bail was originally required therein, then this obligation shall be void; otherwise in full force.

"WILLIAM DENNISON and L. H. MEYER, *Trustees.*
"By GRANT and SMITH, *Their Att'ys.*

" C. WHITAKER,
"JOHN E. HENRY, *Sureties.*"

Whitaker, one of the sureties, made affidavit that he was a citizen of Iowa, and worth double the amount of the bond over and above all debts, and had property subject to execution. The further proceedings in the State court are thus described in the decree: —

" And now, further, on the twenty-first day of May, 1875, this cause coming on for further hearing, comes Lewis H. Meyer, by Grant & Smith and L. M. Fisher, and asks to be made a party defendant in this cause, and calls up his motion for that purpose, filed in this cause on the nineteenth day of May, 1875, whereupon plaintiff, by his attorney, objects to said Meyer being a party defendant in this cause, for the reason that no evidence of the appointment of said Meyer as trustee is before this court, and said motion and the objections thereto having been duly considered by the court, it is ordered that the application of said Meyer to be made a party defendant be refused, and the objections thereto be, and they are, sustained; to which ruling of the court said Meyer, by his

counsel, excepts, and asks that his exceptions in this behalf be made a matter of record in this cause, which is accordingly done. Plaintiff now offers in evidence the contract sued on in this cause, whereupon the defendant, William Dennison, trustee, asks leave to file an amended petition and bond for the transfer of this cause to the United States Circuit Court, a petition and bond for that purpose appearing to have been filed with the clerk of this court on the twentieth day of May, 1875, one of the regular days of the present term of court, to wit, on the twentieth day of May, 1875, aforesaid; but no notice of the filing of the same having been brought to the court, plaintiff, by its attorney, objects that the bond is insufficient, one surety being an attorney, and not eligible as a surety on a bond in court under the law; and further, that the application to transfer this cause is too late, the cause being now reached for trial, and the trial of the same commenced; whereupon the court sustained the objections of plaintiff in this behalf, to which ruling of the court the defendant, William Dennison, trustee, by his counsel, excepts, and asks that his exception be made a matter of record, which is accordingly done, when, pending further proceedings in said cause, court adjourns to May 22, 1875.

"And now, on this twenty-second day of May, 1875, it being one of the days of the regular May Term, 1875, of said court, the court proceeds with the further hearing of said cause; whereupon defendant William Dennison, trustee, now moves the court to proceed no further with the trial of said cause, and asks that said defendant be allowed to file a new bond for the transfer of said cause to the United States Circuit Court, or to deposit money for costs of the same. Plaintiff objects on the ground that the cause is now on trial on its merits. Objection sustained, and said defendant, by his counsel, excepts and asks that this, his exception, be made a matter of record, which is accordingly done; whereupon plaintiff, by his counsel, asks leave to file reply, to the filing of which defendant, Dennison, by his counsel, objects. Objection overruled, and defendant, Dennison, by his counsel, excepts and asks that this, his exception, be made a matter of record, which is accordingly done; whereupon plaintiff files reply, and thereupon defendant, Dennison, by his counsel, asks leave and files his amended answer, and the court now proceeds with the trial of said cause on the issues joined therein, and, after full hearing and argument of counsel, the same is duly submitted to the court, and by consent of parties the court takes the same under advisement, with the understanding that

judgment shall be rendered by the court in vacation, and entered as of the last day of this term. And the court finds the issues in favor of plaintiff; and files and renders his decision that plaintiff's lien is paramount to that of defendant, and orders judgment in favor of said plaintiff.

" It is therefore ordered and adjudged and decreed that the lien of said plaintiff is paramount to that of the defendant, William Dennison, trustee, &c.; and it is ordered, adjudged, and decreed that the former decree and judgment of this court, rendered at the May Term, A.D. 1874, be confirmed, and that the plaintiff's claim for a mechanic's lien, as prayed in his petitions, be established as against the said defendants, upon the property described in the decree in this suit at the February Term of this court, A.D. 1874, and as therein established, against the Davenport and St. Paul Railroad Company, and that the defendants be for ever barred and foreclosed of and from all right of redemption of, in, or to said property, and every part thereof; and that the rights of plaintiff be declared to be superior and paramount to any and all claims and rights of said defendants to the same or any part thereof; and that the defendant, William Dennison, trustee, &c., pay the costs of the retrial of this suit. Thus ordered, adjudged, and decreed, this fourteenth day of October, A.D. 1875."

From this decree Dennison appealed to the Supreme Court of the State, and there contended, among other things, that the court below lost its jurisdiction by the filing of his petition and bond for the removal of the cause to the Circuit Court. The court, however, decided otherwise and affirmed the decree below. To reverse this judgment of the Supreme Court a writ of error has been sued out of this court, and that cause is the first of those mentioned in the title.

After the refusal of the State court to withhold further proceedings in the cause, Meyer and Dennison obtained from the clerk of that court a copy of the record, and on the 9th of October filed it in the clerk's office of the Circuit Court of the United States for the District of Iowa. This was the second day of the next session of that court after the petition for removal, but the delay in filing was explained by an affidavit of the clerk of the State court exonerating the defendants from all blame. The cause was thereupon docketed in the Circuit Court of the United States. On the 13th of October, 1875,

the construction company moved that court to dismiss the suit for want of jurisdiction. This motion was overruled, and on the 14th of January, 1876, the parties stipulated that the case should stand " as it stood at the time of the trial in the court below after the filing of the petition for removal, but with Lewis H. Meyer, a defendant, joining in the answer of Dennison," this agreement, however, "not to be regarded as a waiver of the plaintiff's objections to the right of this court to try this cause." Some further amendments were made in the pleadings, and some further stipulations entered into by the parties to speed the cause, and on the 8th of June, 1876, after hearing both parties, a decree was rendered annulling the decrees of the State court and establishing the lien of the mortgage over that of the construction company. From that decree the construction company appealed to this court, and that appeal is the second of the causes named in the title.

On the 4th of May, 1875, proceedings were commenced by Meyer and Dennison in the Circuit Court of the United States for the foreclosure of their mortgage. To this suit the railroad company, the construction company, and the Delaware County Railroad Company, with others, were defendants. In an answer the construction company asserted the priority of its lien, and the Delaware County Railroad Company claimed title to the railroad in Delaware County under the sheriff's sale in the suit in the State court, free of the lien of the mortgage. On the 8th of June, 1876, this part of the controversy in the Meyer and Dennison suit was heard in the Circuit Court, and resulted in a decree establishing the superiority of the mortgage lien over that of the construction company and the setting aside of the decrees of the State court against Thompson and Dennison, as well as the sheriff's sale and deed under which the Delaware County Railroad Company claimed. From this decree the construction company and the Delaware County Railroad Company appealed, and that appeal is the last of the suits mentioned in the title. No other part of the suit commenced by Meyer and Dennison has been brought up on this appeal, except that which relates to the priority of liens and the title of the Delaware County Railroad Company.

*Mr. George G. Wright* and *Mr. Mason W. Tyler* for Meyer. *Mr. James Grant* and *Mr. Joseph H. Choate, contra.*

Mr. Chief Justice Waite, after stating the case, delivered the opinion of the court.

Three principal questions are presented by these cases. They are : —

1. Was the suit pending in the State court one which could by law be removed to the Circuit Court of the United States ?

2. If it could, was the application for removal made in time, and was it sufficient in form to effect a transfer ? and, ·

3. If the transfer was lawfully made, are the decrees of the Circuit Court, giving the mortgage priority over the mechanic's lien and the title of the Delaware County Railroad Company, right ?

These will be considered in their order.

. 1. As to the right of removal.

The act of March 3, 1875 (18 Stat., part 3, 470), was in · force when the application for removal was made, but not when the new trial was granted to Dennison. The second section of that åct contains, among others, the following provision : " That any suit of a civil nature, at law or in equity, now pending . . . in any State court, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, . . . in which there shall be a controversy between citizens of different States, . . . either party may remove said suit into the Circuit Court of the United States for the proper district."

This we understand to mean that when the controversy about which a suit in the State court is brought is between citizens of one or more States on one side, and citizens of other States on the other side, either party to the controversy may remove the suit to the Circuit Court, without regard to the position they occupy in the pleadings as plaintiffs or defendants. For the purposes of a removal the matter in dispute may be ascertained, and the parties to the suit arranged on opposite sides of that dispute. If in such arrangement it appears that those on one side are all citizens of different

States from those on the other, the suit may be removed. Under the old law the pleadings only were looked at, and the rights of the parties in respect to a removal were determined solely according to the position they occupied as plaintiffs or defendants in the suit. *Coal Company* v. *Blatchford*, 11 Wall. 174. Under the new law the mere form of the pleadings may be put aside, and the parties placed on different sides of the matter in dispute according to the facts. This being done, when all those on one side desire a removal, it may be had, if the necessary citizenship exists.

In the present case, it appears that the suit was originally brought by a citizen of Iowa against another citizen of Iowa and citizens of Pennsylvania and Ohio. There were then, according to the pleadings, two matters about which there might be dispute, — one between the construction company and the railroad company, both citizens of Iowa, as to the amount due the construction company and the actual existence of a mechanic's lien, and the other between the construction company and the trustees of the mortgage, citizens of different States, as to the priority of the mortgage over the mechanic's lien. But before the trustees of the mortgage were actually brought into court by service of process, the dispute between the construction company and the railroad company had been finally disposed of. The amount due the construction company had been ascertained so far as that company and the railroad company were concerned, the mechanic's lien established, and the property sold under the lien to pay the debt. There was after that nothing left of the suit except that part which related solely and exclusively to the priority of the mortgage lien, and as to this the controversy was between the construction company on the one side, and the mortgage trustees on the other. If the railroad company still continued a party to the suit, it was a nominal party only, and its interests were in no way whatever connected with those of the trustees. It did not, therefore, occupy a position in the controversy on the same side with them. This being the case, it is apparent that in the then condition of the suit the only controversy to be settled was between the mortgage trustees, citizens of Pennsylvania and

Ohio, on one side, and the construction company and railroad company, citizens of Iowa, on the other. As such, under the construction we have given this provision of the statute, the suit was removable by reason of that provision. This makes it unnecessary to give an interpretation to that part of the same section of the act of 1875, which, for the purposes of statement, may be read as follows : —

" That any suit of a civil nature, at law or in equity, now pending or hereafter brought in any State court, when the matter in dispute exceeds, exclusive of costs, the sum or value of $500, . . . in which there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the plaintiffs or defendants actually interested in such controversy may remove said suit into the Circuit Court of the United States for the proper district."

We reserve the consideration of this provision until a case requiring it arises. This suit, when the petition for removal was filed, was one in which the only controversy to be decided was between citizens of different States, and therefore provided for in the first clause. Necessarily a removal would take the whole suit to the Circuit Court, because, in its then condition, the suit related to a single controversy only. Whether, as argued, a removal could also have been had under the last clause, we do not decide.

2. As to the removal.

The third section of the act of 1875, so far as it is applicable to this case, reads as follows : —

" That, whenever either party, . . . entitled to remove any suit mentioned in the next preceding section, shall desire to remove such suit from a State court to the Circuit Court of the United States, he or they may make and file a petition in such suit in such State court before or at the term at which said cause could be first tried, and before the trial thereof for the removal of such suit into the Circuit Court, to be held in the district where such suit is pending, and shall make and file therewith a bond, with good and sufficient surety, for his or their entering into such circuit court, on the first day of its then next session, a copy of the record in such suit, and for paying all costs that may be awarded by the said Circuit Court, if said

court shall hold that such suit was wrongfully or improperly removed thereto, and also for their appearing and entering special bail in such suit, if special bail was originally requisite therein, it shall then be the duty of the State court to accept said petition and bond, and proceed no further in such suit, and any bail that may have been originally taken shall be discharged ; and the said copy being entered as aforesaid in said Circuit Court of the United States, the cause shall then proceed in the same manner as if it had been originally commenced in said Circuit Court."

The petition filed in this case was sufficient in form. Enough appeared on its face to entitle the petitioner to his removal.    While it included a statement of belief that, from prejudice or local influence, justice could not be secured by a trial in the State court, no affidavit to that effect was filed ; and this statement could be rejected as surplusage, leaving still good cause for the removal on account of the citizenship of the parties.    Although Meyer's name was included as a petitioner, that of Dennison was included also ; and, as Meyer was not a party to the suit, his name could be rejected as surplusage, and the petition left to stand as that of Dennison alone.    The paper was evidently drafted and put on file under the belief that Meyer would be substituted for Thompson as a party to the suit.    This having been unexpectedly refused, it was presented to the court by the counsel of Dennison, without amendment, as in legal effect the petition of Dennison alone.    This, we think, might lawfully be done.    Under the circumstances, it was the duty of the court to treat the application as coming from Dennison only.

The petition was not signed.    No objection was made on this account in the State court ; and it came too late in the Circuit Court.    If it had been made in the State court, the defect — if in fact there was one — would, no doubt, have been cured at once by the signature of counsel.    The petition was in writing. On its face, it purported to be the petition of Meyer and Dennison ; and it was in fact the petition of Dennison.    This the court knew, because it was actually presented by the counsel of Dennison, and was accompanied by a bond purporting also to be signed in the name of Meyer and Dennison.    In short, every thing in the whole proceeding showed that it was in

fact what, under the circumstances, it purported to be, — the application of Dennison, made in good faith, for the removal of the cause.

The bond was sufficient in form. The condition was such as the statute required. There was no special bail in the case. Nothing was, therefore, to be secured by the bond but the filing of the transcript in the Circuit Court, on the first day of its then next term, and the payment of any costs that might be awarded by that court, in case it should hold that the suit had been wrongfully or improperly removed. No objection was made to the sufficiency of the surety. The only complaint seems to have been that one of the persons who signed the bond as a surety was an attorney of the court, which was forbidden by the laws of Iowa and the practice of the State court. Without determining whether this would have justified the court in not accepting the bond, if he had been the only surety, it is sufficient to say that the act of Congress does not make it necessary that two persons should sign the bond as sureties. " Good and sufficient surety " is all that is required ; and this is satisfied if there is one surety able to respond to the condition of the bond. The question here is not whether the court below had the right to pass upon the sufficiency of the surety, but whether, upon the facts as they appear in this record, it was justified in refusing to accept this bond. We are now examining the case after judgment below in reference to errors which are alleged to have occurred in the progress of the cause. If the State court refuses to accept a bond offered by a petitioner for removal which has " good and sufficient surety " in law, it is error that may be reviewed here. That court has no discretion in such a matter. Its action is governed by fixed rules. Here, as no objection was made to the pecuniary responsibility of the one person who signed as surety, and was competent under the laws of Iowa to do so, it was clearly error for the court to refuse to accept the bond because a second surety was an attorney of the court. Such being the case, we are clearly of opinion that, so far as the form of the application was concerned, the State court was not justified in refusing to accept the petition and bond, and in proceeding further in the cause.

We think also the application was made in time. It is con

ceded that the petition was filed during the first term of the
court at which the suit could be tried, after the act of 1875
went into operation. It has, so far, as we know, been uni-
formly held on the circuit, and to our minds correctly, that, in
suits pending when the act was passed, the application was
in time, if made at the first term of the court thereafter.
*Baker* v. *Peterson*, 4 Dill. 562; *Hoadley* v. *San Francisco*,
3 Saw. 553; *Andrews* v. *Garrett*, 2 Cent. Law Jour. 797;
*The Merchants' & Manufacturers' National Bank* v. *Wheeler*,
13 Blatch. 218; *Crane* v. *Reeder*, 15 Alb. Law Jour. 103.
This disposes of one objection made to the time when the
petition was filed.

It has, however, been argued with great earnestness that the
petition for removal was not actually presented to the court
" before trial." We agree that, as a general rule, the petition
must be filed in a way that it may be said to have been in law
presented to the court before the trial is in good faith entered
upon. There may be exceptions to this rule; but we think it
clear that Congress did not intend, by the expression " before
trial," to allow a party to experiment on his case in the State
court, and, if he met with unexpected difficulties, stop the pro-
ceedings, and take his suit to another tribunal. But, to bar
the right of removal, it must appear that the trial had actually
begun and was in progress in the orderly course of proceeding
when the application was made. No mere attempt of one party
to get himself on the record as having begun the trial will be
enough. The case must be actually on trial by the court, all
parties acting in good faith, before the right of removal is gone.

Upon the facts in this case it is apparent, to our minds, that
the trial had in no sense begun when Dennison presented his
petition formally to the court for a removal. It is equally
apparent that the counsel for the construction company at-
tempted to get up a race of diligence with his adversary, in
which he should come out ahead. As soon as the court de-
cided not to admit Meyer as a party to the suit, he seems to
have offered the contract sued on in evidence; but, unfortu-
nately for him, in so doing he did not keep himself inside the
orderly course of proceedings. It is evident that at that time
the cause was not up for hearing on its merits; and it nowhere

appears that the court accepted then the offer of the counsel to put in his evidence. Before any action was taken by the court on that subject, Dennison presented his petition, which had been on file ready to be presented, as soon as the motion of Meyer was decided. Immediately after the application of Dennison was disposed of, the court adjourned until the next day; and, when it again met, Dennison renewed his application. This being refused, the construction company asked leave to file a reply, which up to that time had not been done, and which was necessary to complete the pleadings, and make up the issues for trial. That being done, and a motion by Dennison for leave to amend his answer overruled, the court proceeded "with the trial of said cause on the issues joined therein." A statement of these facts is sufficient to show that, when Dennison presented his petition in form to the court, the trial had in no just sense begun. As in the case of *Yulee* v. *Vose* (99 U. S. 539), "the most that can be said is, that preparations were being made for trial."

It is further claimed that the citizenship of Dennison in Ohio was not proved. As in the case of the sufficiency of the bond, the question here is not whether, if the statements of the petitioner in that particular had been denied, it would have been competent for the State court to institute an inquiry on that subject, but whether, on the facts as they appear on the face of this record, which also shows how they should have appeared to the court below, that court was justified in proceeding further in the suit. We fully recognize the principle heretofore asserted in many cases, that the State court is not required to let go its jurisdiction until a case is made which, upon its face, shows that the petitioner can remove the cause as a matter of right. But here, to say nothing of the statements in the petition which were not disputed, the record is full of evidence that Dennison was a citizen of Ohio. In the mortgage Thompson is described as of Pennsylvania, and Dennison as of Ohio. In addition to this, in order to bring them into court, the affidavit of the counsel for the construction company was put on file, in which it is directly stated, under date of April 6, 1874, that personal service of process could not be made on them within the State, and that they were non-resi-

dents.   Under these circumstances, it was certainly error for the State court to retain the cause because it was not shown that the citizenship of the adverse parties was in different States. The citizenship of the two corporations in Iowa is averred by the construction company in its own pleadings.

It is still further claimed that even though the lower court ought to have accepted the petition and bond and withheld all further proceedings in the suit, that error was waived by the subsequent appearance of Dennison and going to a hearing, and that for this reason it was right for the Supreme Court not to reverse the judgment because of the original fault. This question is settled by the case of *Insurance Company* v. *Dunn*, 19 Wall. 214, where it is distinctly held that if a party failed in his efforts to obtain a removal and was forced to trial, he lost none of his rights by defending against the action. This record is full of protests on the part of Dennison against going on with the suit, and of exceptions to the ruling which kept him in court.   Indeed, it is difficult to see what more he could have done than he did do to get out of court and take his suit with him.   He remained simply because he was forced to remain, and is certainly now in a condition to have the original error of which he complained corrected in any court having jurisdiction for that purpose.   In addition to this, we now know that he did take his suit to the Circuit Court and carried his adversaries with him.   It is true, by reason of the fault of the clerk of the State court, he was unable to file his transcript of the record in the Circuit Court on the first day of the term, but he did so on the second, and had the cause regularly docketed, after which a trial was had, all parties appearing.   It is also true that the construction company objected to the delay, but that objection was, as we think, properly overruled.   While the act of Congress requires security that the transcript shall be filed on the first day, it nowhere appears that the Circuit Court is to be deprived of its jurisdiction if, by accident, the party is delayed until a later day in the term.   If the Circuit Court, for good cause shown, accepts the transfer after the day and during the term, its jurisdiction will, as a general rule, be complete and the removal properly effected.

We must, therefore, hold that the Supreme Court of the State erred in not reversing the judgment of the Circuit Court of the county and sending the cause back with instructions to that court to proceed no further with the suit.

3. As to the priority of liens.

It is conceded that by the laws of Iowa a mechanic's lien for work done under a contract takes precedence of all incumbrances put on the property by mortgage or otherwise after the work was commenced. Such has been the uniform course of decisions by the highest court of the State.

It is also conceded that, by a statute of the State (Code 1874, sect. 385), there can be no mechanic's lien in favor of one who takes collateral security on the contract under which he does his work.

Such being the law, it is clear that as the mortgage was not recorded until June 4, 1872, and work under the contract of the construction company was commenced Sept. 29, 1870, the mechanic's lien must have precedence, unless the construction company took collateral security on their contract, or something equivalent was done.

It is contended that the words, " all the money for the work hereinbefore specified to be paid by the citizens of Delaware County," which appear above the signature of the president of the railroad company to the contract, give the construction company collateral security, and thus vitiate the lien. We cannot so interpret the contract. In the body of the instrument the obligation of the railroad company to pay is absolute and unconditional. The additional clause does not purport to transfer to the construction company the moneys that are due or that may become due from the citizens of Delaware County. No control is given the construction company over these moneys. The most that can be said of the clause is that it contains an implied obligation on the part of the railroad company to use the money which came into its hands from the citizens of Delaware County to discharge its obligations under the contract, and a corresponding obligation on the part of the construction company to wait a reasonable time for the collection of these moneys before putting the railroad company in default for non-payment.

In *Christmas* v. *Russell* (14 Wall. 69), we said: "An agreement to pay out of a particular fund, however clear its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. . . . The assignor must not retain any control over the fund, any power to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee." It seems to us that this is conclusive of the present case. The railroad company has nowhere by its agreement given the construction company any power to collect. The amount due is nowhere specified; neither does it appear from the instrument itself what was the nature of the obligations the citizens of Delaware County were under to make the payment. It is not even said that the payments thus to be made grew out of any obligations of the citizens of Delaware County to the railroad company. According to the construction claimed, the addition of these somewhat indefinite words at the end of the contract, and after a part of the signatures had been affixed, must have the effect of changing the whole tenor of the contract as set out in the body of the instrument, and substituting the citizens of Delaware County as obligors and bound absolutely for the payment of the work to be performed, instead of the railroad company. Such we cannot believe was the intention of the parties, and every thing which occurred afterwards is entirely inconsistent with any such idea. It now appears from the evidence that there had been very considerable subscriptions to the capital stock of the railroad company by the citizens of Delaware County, and that taxes had been levied by the county, or some of the townships in the county, to aid in the construction of the railroad. It also appears that all of this money was collected by and paid to the railroad company. In no single instance, so far as we can discover, was it paid to the construction company. The full amount subscribed and levied was not sufficient to pay all that was due that company. Much of it was paid over, but all of it was not. Of the amount paid the construction company by the railroad company a very considerable portion was collected from other sources.

Without pursuing the subject further, it is sufficient to say that, in our opinion, the construction company has done noth-

ing to waive or deprive it of the right to assert a mechanic's lien, and that the decrees of the Circuit Court establishing the superiority of the lien of the mortgage were wrong and must be reversed. As the sale under the execution from the State court, by which the Delaware County Railroad Company now holds and claims title was made in a suit to which the trustees of the mortgage were not at the time parties served with process, the sale did not cut off their interest as mortgagees of the property sold. Neither are they bound by the decree in the State court finding the amount due the construction company. The Delaware County Railroad Company took by its purchase only such title as the construction company had to convey, and as the interest of the mortgagees was not cut off by the sale to the construction company, it is not cut off by the transfer to the Delaware County Company.

We, therefore, order and adjudge as follows : —

1. That the judgment of the Supreme Court of Iowa be reversed with costs, and that the cause be remanded, with instructions to reverse the decree of the Circuit Court of Delaware County, and direct that court to proceed no further with the suit.

2. That the decree of the Circuit Court of the United States in the second of these cases be reversed with costs, and that the cause be remanded with instructions to ascertain the amount due the Construction Company under its contract, and to enter a decree establishing the lien of that company as prior in right to that of the mortgage, and in default of payment of the amount due by a day to be named, directing the sale of that part of the railroad company which lies in Delaware County, to pay the debt. Such provision for redemption is to be made as is allowed in such cases by the laws of Iowa.

3. The decree of the Circuit Court in the remaining case is also reversed with costs, and the cause remanded with instructions to enter a decree establishing the lien of the Construction Company as superior to that of the mortgage, and declaring the title of the Delaware County Railroad Company, by reason of the sheriff's sale in the State court to be invalid and not sufficient to pass title as against the

lien of the mortgage, and for such other proceedings as justice requires.

MR. JUSTICE STRONG concurred in the judgment, but not in the construction given by the majority of the court to the second section of the act of 1875, respecting removals from State courts.

MR. JUSTICE BRADLEY concurred in the judgment, and delivered the following opinion in which MR. JUSTICE SWAYNE concurred.

I concur in the judgment in these cases, but dissent from so much of the opinion as seems to assume that, one condition of Federal jurisdiction, in the removal of a cause from a State court, under the first clause of sect. 2, act of 1875, is, that each party on one side of the controversy must be a citizen of a different State from that of which either of the parties on the other side is a citizen. This portion of the act gives the right of removal to either party, in any suit in which there is "a controversy between citizens of different States." In my judgment a controversy is such, as that expression is used in the Constitution, and in the law, when any of the parties on one side thereof are citizens of a different State, or States, from that of which any of the parties on the other side are citizens. It is true, if there are other parties on opposite sides of the controversy who are citizens of a common State, it may also be a controversy between citizens of the same State. In other words, a controversy may be, at the same time, both a controversy between citizens of the same State and between citizens of different States. But the fact that it is both, does not take away the Federal jurisdiction. Neither the Constitution, nor the law, declares that there shall not be such jurisdiction if any of the contestants on opposite sides of the controversy are citizens of the same State; but they do declare that there shall be such jurisdiction if the controversy is between citizens of different States. The gift of judicial power by the Constitution, and the gift of jurisdiction by the law, are in affirmative terms; and those terms include as well the case when only part of the contestants opposed to each

other are citizens of different States, as that in which they are all of different States. And I see no good reason why both the Constitution and the law should not receive a construction as broad as that of the terms which they employ. On the contrary, I think there is just reason for giving to those terms their full effect. The object of extending the judicial power to controversies between citizens of different States was, to establish a common and impartial tribunal, equally related to both parties, for the purpose of deciding between them. This object would be defeated in many cases if the fact that a single one of many contestants on one side of a controversy being a citizen of the same State with one or more of the contestants on the other side, should have the effect of depriving the Federal courts of jurisdiction. This absurdity became so glaring under the construction formerly given by this court to the Judiciary Act of 1789, in the case of corporations, when every stockholder was held to be a party, that the court was at length impelled to regard a corporation as a citizen of the State which created it, without regard to the citizenship of its members; — thus getting rid of the troublesome stockholder who happened to be a citizen of the same State with the opposite party, and who almost always appeared in the case.

If we give the same construction to the present law which was given to the Judiciary Act, we shall certainly meet with like embarrassment and difficulty in exercising the fair and proper jurisdiction of the Federal courts. No cases are more appropriate to this jurisdiction, or more urgently call for its exercise, than those which relate to the foreclosure and sale of railroads extending into two or more States, and winding up the affairs of the companies that own them; since, in addition to the convenience of a single jurisdiction having cognizance of the whole matter (which could readily be conferred, if it is not so) the local tribunals in such cases, however upright and pure, are naturally more or less favorably affected towards the interests of their own citizens: and yet, it is almost always essential, in order to do complete justice in these cases, to call before the court some parties on opposite sides of the controversy who are citizens of the same State. If this fact is to deprive the Federal courts of jurisdiction, without regard to

the numerous and important contestants on opposite sides who are citizens of different States, the value of the institution of national courts, for taking cognizance of controversies between citizens of different States, will be greatly impaired.

But it seems to me clear that, in construing the present law, we are not bound by the construction given to the old Judiciary Act. The words of that act, conferring jurisdiction upon the circuit courts in respect of citizenship, were not the same as those used by the present law or by the Constitution. It only conferred jurisdiction when " the suit is between a citizen of the State where the suit is brought and a citizen of another State." The singular number only was used; and the courts, in applying the law to cases in which there was a plurality of plaintiffs or defendants, construed it (perhaps justly) as requiring that each plaintiff and each defendant should have the citizenship required by the law. But, now, it is not so. The present law follows the words of the Constitution, and gives jurisdiction to the circuit courts in the broadest terms, namely, whenever, in any suit, there is " a controversy between citizens of different States; " and this broad and general expression, as I think I have shown, gives jurisdiction where any of the contestants on opposite sides of the controversy are citizens of different States.

The only objection to this construction which has been seriously pressed, is drawn from the argument *ab inconvenienti*; namely, that if in a controversy where the contestants are numerous, a single case of diverse citizenship between opposite parties should give Federal jurisdiction, the courts of the United States would be overwhelmed with business, litigants would be unnecessarily drawn away from the domestic tribunals, and the intent of the Constitution would be subverted. Now whilst I am satisfied that the apprehended inconveniences are greatly exaggerated, the inconveniences which would result from a contrary interpretation to that contended for would be at least equally great in depriving the Federal courts of jurisdiction by a single case of common citizenship between opposite parties, though a large majority of the opposing litigants are citizens of different States; and, thus, one inconvenience would balance the other, and we should still be left to

seek the true construction of the Constitution and the law from the words which they use. But the inconveniences would not be equal. To deprive the Federal courts of jurisdiction by a partial community of citizenship between the opposite parties would, in many instances, actually defeat the very object which the Constitution and the law have in view.

Even if it should happen that, upon the construction contended for, many cases might be brought into the Federal courts in which a partial community of citizenship did exist between the opposing parties, what harm would ensue? Ought it not to be presumed that the courts, which are courts of the common country of all the parties, will as well do equal and exact justice between them as the State courts could do? If the judicial force is not sufficient to meet the exigency, let it be increased. If the courts are not held at sufficiently convenient places, that difficulty can easily be removed. The phrase in question, " controversies between citizens of different States," is a constitutional one ; and the construction which we may give to it will affect the judicial powers of the Federal government for all time ; and any temporary inconvenience arising from existing arrangements, which can be remedied by legislation, ought not to stand in the way of a fair construction of the organic law.

But it is not necessary to pass upon this question in this case. The present controversy is wholly between citizens of different States ; and we are all agreed as to the decision that ought to be made. When the question does come squarely before us, and it becomes necessary to decide it, it is to be hoped that it may receive the fullest consideration.