### LANGDON *v.* FOGG.

#### (*Circuit Court, S. D. New York.* July 16, 1883.)

1. REMOVAL.—ACT OF 1875, § 2—SEVERABLE CONTROVERSY—MINING CORPORATION—FRAUDULENT ORGANIZATION.

    An action against several defendants may be removed to the circuit court by one of them, against whom alone there is a separable controversy, which can be fully determined without the presence of the other defendants, no matter what additional controversies or grounds of action the complaint may contain.

2. SAME—MINING CORPORATION—FRAUDULENT ORGANIZATION—ILLEGAL ISSUE OF STOCK.

    Where the trustees of a mining company, with $10,000,000 nominal capital, at its organization issued all its stock as full-paid, in the purchase of certain mining property worth less than $100,000, and then, in pursuance of a previous agreement with the grantor of the land, took back an assignment of all the stock to themselves, and paid to the seller of the property less than $100,000, and then put the stock on the market as full-paid stock, and sold it for their individual account, some of which the plaintiff purchased, *held,* in an action brought by the plaintiff to compel the trustees individually to "account" for $10.000,000, and also that each of them severally account for their profits on such sales of stock, that the complaint charged no joint account or community of interest in such sales or profits on stock sold, and that in respect thereto the controversy was severable, as neither, if accountable at all, could be held for the profits of the others, and the profits of each could be determined without the presence of the other defendants, and that the cause was, therefore, removable.

Motion to Remand.

*John R. O'Donnell* and *Grove M. Harwood,* for plaintiff.

*E. F. Hyde,* for defendant.

BROWN, J. This action was brought in the superior court of this city by the plaintiff, as a stockholder in the Silver Era Mining Company, in behalf of himself and all other stockholders. The company was organized as a corporation under the laws of this state in February, 1880, to have a capital of $10,000,000, divided into 100,000 shares of $100 each. The defendants in the suit are the corporation, and five individual defendants who are alleged to have been the trustees of the corporation at the time of its formation, and during the first year afterwards. Three of the defendants, as well as the plain-

tiff, are citizens of New York, where the main office of the corporation is also located. The suit was removed to this court upon the petition of the defendant Fisk, a citizen of New Jersey, under section 2 of the act of 1875, on the ground that the suit contains a controversy which is wholly between himself and the plaintiff, who are citizens of different states. A demurrer to the complaint was served by the defendant Fisk, on May 22, 1883, before the cause was at issue as to the other defendants; and at the June term, which was the first term of the superior court at which the issue of law upon the demurrer as to the defendant Fisk could possibly have been tried, the cause was removed to this court. It was, therefore, removed in due time, and the first ground for remanding cannot be sustained. *Johnson* v. *Johnson*, 13 FED. REP. 193; *Cramer* v. *Mack*, 12 FED. REP. 803; *Knowlton* v. *Congress, etc.*, 13 Blatchf. 170: *Forrest* v. *Keeler*, 17 Blatchf. 522; [S. C. 1 FED. REP. 459.]

2. The only other ground for the motion to remand is that the cause was not removable at all, because, as it is claimed, it does not contain any controversy which can be separately determined between the defendant Fisk and the plaintiff; and this involves an examination of the nature of the action. The complaint is in equity. In substance it alleges that the defendants, shortly after the organization of the company, and acting as its trustees, agreed with one Henry S. Sanders to issue to him as full-paid stock the whole of the capital stock of the corporation, in consideration of the conveyance to the corporation by Sanders of certain mining claims and property in Arizona, which were of no value for mining purposes, and of the actual market value of less than $100,000, as the defendants knew; that shortly afterwards all of said stock was by Sanders turned over to the five individual defendants, or some of them, or to them and their associates and nominees, upon payment of the sum of $46,666.67, as near as the plaintiff can ascertain, but at any rate not over $100,000, and that this was done in pursuance of an agreement between the defendants and Sanders prior to the conveyance of the mining property; that the defendants thereafter, assuming to act in behalf of the corporation, by certificates of stock issued and circulated by them, represented to the public, including the plaintiff, that the stock was full-paid; that the plaintiff purchased his stock in the market as full-paid stock, relying on such representations; that after the issue of said stock as aforesaid the corporation had no means of developing and improving the property purchased, and, failing to work it, it had become forfeited and passed beyond the control of the corporation; that upon the purchase of plaintiff's stock a new certificate was issued to him for 100 shares as full-paid stock, upon his surrender of the former certificates.

The complaint then charges "that the individual defendants have individually sold the stock, or a portion thereof, so turned over to them, as aforesaid, and that said individual defendants have indi-

vidually received large sums of money,—gains and profits from the sales of the stock of the defendant corporation, or from the portion thereof sold; that plaintiff is unable to state definitely the amount received by said individual defendants, and each of them, from the sales of such stock, or the amount of profits realized from such sales; that the defendants have not accounted for or paid over to the corporation the difference between the $10,000,000, represented by the capital stock, and the actual cost or real value of the property conveyed to it by Sanders, nor for their gains on the stock sold by them; that the defendants, or a majority of them, are still the trustees of the corporation, which is in no condition to prosecute any action for the relief sought by this action, and neglects to do so; for which reason the plaintiff brings this suit.

The relief prayed for is that the defendants may be "declared trustees of the $10,000,000 represented by the capital stock; and that they may, collectively and severally, be decreed to account of and concerning such sum; and also account for the gains and profits received by each from the sale of the capital stock; that the actual value of the property conveyed by Sanders be determined by the court, if it had any value, and credited on such accounting, and the amounts so found due be brought into court and paid to a special receiver for the benefit of all the stockholders who may join in this suit or come in under the decree."

If I understand the complaint rightly, it demands (1) that the individual defendants shall "account" to the corporation, or stockholders, for $10,000,000, less such sum as the court may find the property conveyed by Sanders to have been worth; (2) that they "severally account for the profits received by each from the sales of the capital stock."

In ascertaining whether the cause was removable under section 2 of the act of 1875, it is not necessary to determine what else the complaint may contain, how many causes of action, or whether consistent or inconsistent, provided it does appear that there is any one severable controversy contained in it which is wholly between citizens of different states, and may be completely determined without the presence of the other defendants. If there be such a separable controversy in the suit, then the whole suit is removable under the act of 1875. *Barney* v. *Latham,* 103 U. S. 205; *Hyde* v. *Ruble,* 104 U. S. 407, 409; *People* v. *Ill. Cent. R. Co.* 16 FED. REP. 881. If there is no such separable controversy as between the defendant Fisk exclusively and the plaintiff, then it is not removable. Id.; *Folsom* v. *Continental Bank,* 14 FED. REP. 497.

The two objects apparently sought by the complaint—namely, one, an account to the corporation for $10,000,000, and the other, an account for profits on the stock sold—are entirely independent, and, as it would seem, incompatible with each other.

It is difficult to understand upon what theory the defendants can be

called to "account to the corporation" for money or property, which neither the corporation nor the trustees, as such, are alleged ever to have had. See *Robinson* v. *Smith*, 3 Paige, 222; *Dodge* v. *Woolsey*, 18 How. 331; Ang. & A. Corp. § 312. The complaint does not state that there was ever a dollar paid in as capital of the company, either to the trustees, as such, or into the treasury of the corporation, for the stock that was called full-paid stock and issued to Sanders as such; or that the corporation was not then as worthless as the mining property is alleged to have been; or that it parted with anything of value in taking the conveyance. All that can be gathered from the complaint in this respect is that the individual defendants undertook, by an arrangement with Sanders, to issue all the capital stock of $10,-000,000 to him in exchange for the land, and then to take back from Sanders the same stock upon payment to him of somewhere from $46,000 to $100,000, and through this device to represent to the public that the stock was full-paid stock. If this was in fact the substance of the transaction, it was, of course, a sham and a cheat, and any person actually misled as to the facts, and induced by such frauds to buy stock, believing that $10,000,000 had been put into the company in cash, or its equivalent in mining property of that actual market cash value, may doubtless have his legal action for damages for false representations. No such claim, however, is made in this suit, nor are facts stated sufficient to support such an action. The only thing remaining in the defendants' hands as trustees which they have ever had, and for which they could by any possibility account, is not the sum of $10,000,000, nor any part of it, but the mining property itself, (which they never disposed of,) and the stock which they received from Sanders, or the proceeds arising from the sales of it. No account of the stock is asked, nor any injunction against further sales.

As to this stock, if the complaint states facts sufficient for an accounting in equity, the prayer of the complaint is against the individuals severally who received and sold the stock, "for the gains and profits received by each." There is nothing in the complaint from which it can be gathered that any sales of this stock were made by them jointly, or on joint account, or for their joint use. The transfer of the stock to Sanders, being, upon the allegations of the complaint, an evident sham, in law amounts to nothing. In substance and effect, according to the complaint, the defendants, having individually agreed to pay Sanders some $46,666 for the mining property, caused it to be conveyed to the corporation as a payment by Sanders into the treasury of the corporation of the whole amount of its capital of $10,000,000; whereas, by the statutes of this state, it could not be lawfully accepted on account of capital, or serve as a basis for the issue of stock, beyond its actual value, which, according to the complaint, was not over $100,000. The defendants themselves, or some of them, then took from Sanders all the stock thus

illegally issued, and proceeded to put it on the market as full-paid stock, and sold more or less of it, as the complaint states, for their individual profit. The complainant thereupon sues, not for his individual injury, but for and in behalf of the corporation itself, which, as he alleges, is disabled through the defendants being a majority of the board of trustees. For the corporation to sue for the profits on sales of stock thus issued would seem to import a ratification by the corporation of the issue itself, which, upon the facts stated in the complaint, was plainly illegal and incapable of such ratification. Waiving this objection, however, as the stock is not alleged to have been taken or sold for the joint use or profit of the five individual defendants, each defendant can only be held liable to account (if such a transaction is capable of ratification so as to sustain any action for such an account) for what stock he caused to be sold, and the profit he individually made upon it. No community of interest among the individual defendants is alleged, and no ground is stated upon which either one could be held accountable for any profits made by the others. *Franklin* v. *Jenkins,* 3 Wend. 130; Pom. Rem. §§ 308–310. The claim for such profits as against each separate defendant, whatever it may amount to, can therefore be wholly determined without the presence of the other individual defendants, and this branch of the case—*i. e.,* this "controversy" as to each defendant—is therefore severable, and the case must, therefore, be held properly removed. The corporation defendant, having the same interest as the plaintiff, is classed with the plaintiff as respects removal. *Removal Cases,* 100 U. S. 457; *People* v. *Ill. Cent. R. Co.* 16 FED. REP. 881, 888.

If the illegal issue of the stock be viewed as wasting or misapplying possible property or means of the corporation through the joint action of the trustees, it would present the case of a joint and several tort, (*Hardon* v. *Newton,* 14 Blatchf. 379; Pom. Rem. § 810; *In re Alexander,* 21 Ch. Div. 149, 161; *Flitcroft's Case,* Id. 519; *In re Anglo-French, etc.,* Id. 492; Rule 51 in Equity;) and the decision in *Kerling* v. *Cotzhausen,* 16 FED. REP. 705, in which Mr. Justice HARLAN concurred, would be controlling that the first branch of the complaint would also be severable at the option of the non-resident, Fisk.

The motion to remand is, therefore, denied.