## JARVIS et al. v. CROZIER et al.

(Circuit Court, D. West Virginia. December 6, 1899.)

1. REMOVAL OF CAUSES—DIVERSITY OF CITIZENSHIP—REARRANGEMENT OF PARTIES.

A plaintiff in a suit in a state court for the partition of real estate, who is a citizen of a different state from the defendants, where the bill does not disclose any controversy between the parties as to their respective interests in the property, cannot prevent a removal of the cause to a federal court by defendants by joining as plaintiffs with himself infant owners of an interest in the property, who are citizens of the same state as defendants, for whom he assumes to sue as next friend, but without showing any authority therefor. In such case the federal court, for the purposes of a motion to remand, will rearrange the parties by transposing the infants to the side of the defendants, where they properly belong, and will appoint a guardian ad litem to protect their interests.

2. INFANTS—ACTIONS BY OR AGAINST—REPRESENTATION BY NEXT FRIEND.

The next friend of an infant, who is recognized by the courts as authorized to institute or defend suits in his behalf, is supposed to be his nearest relative who has no personal interest in the matter in question; and it is a well-settled principle that one who is personally interested in a suit cannot represent an infant therein as his next friend.

On Motion to Remand to State Court.

Brown, Jackson & Knight, for complainants.
Flournoy, Price & Smith, for defendants.

JACKSON, District Judge. This cause was removed to this court, by the defendant Samuel A. Crozier, from the circuit court of McDowell county, and the record filed on the 14th day of November, 1895. Upon the 5th day of January, 1898, a motion was made by the plaintiffs to remand the cause to the circuit court of McDowell county, which motion (being argued by counsel) the court, upon consideration thereof, overruled. Between the time of filing the record in this court and the motion to remand, there seems to have been little preparation made for the hearing of the cause, except the filing of the joint answer of Samuel A. Crozier in his own right and of the trustees of the Crozier Land Association, and the answer of the Norfolk & Western Railroad Company. Since the motion to remand was overruled, quite a number of depositions have been taken by the defendants in support of their answers. The plaintiffs, failing to take any evidence in the case, have at the present term of the court asked leave to renew their motion to remand, which leave was granted, and the court again heard the argument, and this cause now comes on to be heard upon that motion.

It appears from the bill filed in this cause by B. F. Jarvis in his own right, and as the next friend of Mary Carry Bowen and Bowen Watts, who are infants, against the defendants, that the plaintiffs derived title to a certain tract of land some years ago, known as "Peery Bottoms," containing about 29 acres; that the lands were conveyed by one Andrew Sarver, one half to William T. Moore, and the other half to Peery and Bowen, and that William T. Moore subsequently conveyed his one-half to J. A. Belcher, who afterwards conveyed that one-half interest acquired from Moore to Samuel A. Crozier, and that

98 F.—48

Crozier conveyed a portion of his one-half to the Norfolk & Western Railroad Company; and that the remaining portion of his half was conveyed to trustees for the Crozier Land Association. The bill discloses the fact that both Peery and Bowen are dead, and that their one-half interest passed to their heirs, and that all of the heirs except the infant plaintiffs, Mary Carry Bowen and Bowen Watts, have conveyed their respective interests in said parcel of land to the plaintiff Jarvis. The only object and purpose of this bill is a partition of the land described in the bill between the various owners in severalty, except a prayer for general relief. Upon the face of the bill, there is no controversy between the plaintiffs and defendants as to the extent of their respective interests. The bill upon its face shows that the plaintiff Jarvis is only entitled to one-fourth, and that the two infant heirs of Bowen are entitled to one-fourth, making one-half, and that Crozier and those under whom he claims are entitled to the other half. The question of title is not in controversy, as both sides claim under Sarver as a common source of title. It is to be observed that there is no allegation in this bill that Jarvis, who sues as the next friend for the infant plaintiffs, was ever authorized to do so by a court, or by next of kin, or by anybody interested in them. It does not appear that he is in any wise related to them, but that he assumed the right, without any authority whatsoever, of making them plaintiffs in this cause of action. Ordinarily they would properly be defendants to the cause for the purposes of partition, as sought in this bill. There is no dispute between Jarvis and the infant plaintiffs as to their title or the extent of it. He admits upon the face of the bill that they are the owners of one undivided one-fourth of the 29 acres. It seems to the court that the draftsman of this bill had a special object in associating the infants as plaintiffs with Jarvis, and that the object was to prevent, if possible, the removal of this cause by Crozier, the Crozier Land Association, and the Norfolk & Western Railroad Company into the court of the United States, all of which defendants are nonresidents of the district of West Virginia. If this be the case, and the court can properly do so, would it not be a case in which the court would transpose the parties, and place them on the respective sides of the case, so as to retain the case for hearing in this court, if it can be done? The only matter in dispute or controversy, if it can be called a controversy, between the infant plaintiffs and the plaintiff Jarvis, would be the laying off of their respective interests in the said land. It is claimed that by reason of the fact of the infant plaintiffs being citizens of Virginia, and the Norfolk & Western Railroad Company being also a citizen of Virginia, this case is not wholly a case between citizens of different states. This partition can be had just as well by the infant plaintiffs being transposed and made infant defendants in the case, and their rights as fully and amply protected, as if they were plaintiffs to the action. The whole theory of the case, as presented by the bill, shows that they would more properly be defendants than plaintiffs; and in the absence of an allegation in the bill that Jarvis was authorized to bring this suit, and associate these infants as infant plaintiffs, or the exhibition of any

authority sustaining an allegation of that character, it would seem to be right, and properly so, to transpose these parties, and make them defendants in this cause, in order that the rights of all parties could be heard and adjudicated in this tribunal, where the defendants Samuel A. Crozier, the trustees of the Crozier Land Association, and the Norfolk & Western Railroad Company could be heard, as they desired.

In the Removal Cases, 100 U. S. 457, 25 L. Ed. 593, the court held:

"For the purposes of a removal the matter in dispute may be ascertained, and, according to the facts, the parties to the suit arranged on opposite sides of that dispute. If in such an arrangement it appears that those on the one side, being all citizens of different states from those on the other, desire a removal, the suit may be removed."

In the case of Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514, the court held (following the cases just cited) that you may disregard as immaterial the mere form of the pleadings, and place the parties on the opposite side of the real matter in dispute, according to the facts.

In the case of Hyde v. Ruble, 104 U. S. 407, 26 L. Ed. 823, following the decisions in the Removal Cases, the court held that where all the parties to the controversy on one side are citizens of different states from those on the other side, and there is in the suit a separable controversy, wholly between the parties who are citizens of different states, which can be fully determined as between them, it may be removed.

It may be contended in this case that the infant plaintiffs have made no application for a removal. They could only make it by a party who was duly authorized to represent them as their next friend, either by an order of court, or by a party who was either an executor or a personal representative who had control of their estate, or who was next of kin, and so nearly related to them that the court would recognize the right to act for them. So far as the present case is concerned, it does not appear that Jarvis was ever authorized to act for them, or that he was ever authorized to institute this suit for them; but he has made use of their names, and subjected them to litigation, and the costs and expenses thereof, without the slightest authority therefor. Is not such action upon the part of Jarvis calculated to awaken the attention of the court in the case, and is it not a mark of inexcusable inattention to make infants plaintiffs in an action by a party as a next friend who is neither next of kin nor has exhibited any authority whatever to justify his action in arranging them as plaintiffs to an action in which he had a personal interest? It is a well-settled principle that any one must have no personal interest, however remote or indirect, who either institutes or defends an action for infants as their next friend. In re Burgess, 25 Ch. Div. 243; In re Corsellis, 50 Law T. (N. S.) 703. "When an infant claims a right or suffers an injury on account of which it is necessary to resort to a court of chancery to protect his rights, his nearest relation, not concerned in point of interest in the matter in question, is supposed to be the person who will take him under his protection and institute a suit to assert

his rights, or defend an action against him; and it is for this reason that a person who institutes a suit on behalf of an infant is termed 'his next friend.'" 1 Daniell, Ch. Prac. 69. Legal proceedings in favor of an infant should in every respect be strictly guarded, for the reason that an infant on coming of age can repudiate a suit brought in his name, and the court would be compelled to strike out his name as plaintiff and add it as a defendant. Chief Justice Marshall, in the case of Bank v. Ritchie, 8 Pet. 128, 8 L. Ed. 890, discusses at some length the rights of parties to appear for infants; and, in a case in which there was an attempt to secure a judgment against infants who were represented by a guardian ad litem, he remarks that "the guardian ad litem was appointed on motion of counsel for the plaintiffs, without bringing the minors into court, or issuing a commission for the purpose of making the appointment. This is contrary to the most approved usage, and is certainly a mark of inexcusable inattention,"—and refers to Coop. Eq. Pl. 109, for his position. It is the duty of a court of equity to look after the interests of infant defendants, and to protect them, in the absence of any one to represent them; and it would seem proper in this case that a court of equity should make the infants defendants, and appoint a guardian ad litem to protect their interests as infant defendants, instead of allowing them to remain as plaintiffs to that action, and possibly have their estate more or less absorbed by the costs and expenses of litigation. An order will be entered transposing the position of Mary Carry Bowen and Bowen Watts from plaintiffs to defendants, and making them defendants in this action; also, directing that a guardian ad litem be appointed for the infant defendants, to protect their interests. For the reasons assigned, the motion to remand is overruled.