PITTSBURGH, C. & ST. L. RY. CO. v. BALTIMORE & O. R. CO. et al.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1894.)

No. 127.

1. APPEALABLE JUDGMENTS—INTERLOCUTORY DECREE FOR ACCOUNTING.

A decree determining the right of a complainant to an account, and settling the principles on which the account should be taken, is interlocutory merely, and no appeal lies therefrom.

2. JURISDICTION OF FEDERAL COURTS—DIVERSE CITIZENSHIP—PROPER PARTIES.

A contract between two corporations for the joint operation of part of a line of railroad owned by them provided that the local freight business should be done by one of them, which should receive a certain percentage of the earnings therefrom, the remainder to be divided equally; and that corporation subsequently leased its line for a certain percentage of the gross earnings thereof, including the proper proportion of the earnings of said part. Thereafter the lessee, claiming to be entitled to all the rights of its lessor under the contract, brought suit for an accounting of local freights carried on said part of the line by the successor of the other party to the contract, and made both such successor and the lessor parties defendant. *Held,* that the lessor was a proper, though not a necessary, party, and as its interests in the controversy were identical with complainant's, and it and the other defendant were corporations of the same state, a federal court had no jurisdiction, although complainant was a corporation of a different state.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

This was a suit by the Baltimore & Ohio Railroad Company against the Pittsburgh, Cincinnati & St. Louis Railway Company and the Central Ohio Railroad Company, as reorganized, for an accounting. A decree for an accounting was granted, and, after a hearing on exceptions to the report of a special master thereon (55 Fed. 701), a final decree was rendered in favor of complainant and of said defendant the Central Ohio Railroad Company. The Pittsburgh, Cincinnati & St. Louis Railway Company appealed.

The Baltimore & Ohio Railroad Company, a corporation of the state of Maryland, filed its bill in the circuit court of the United States for the southern district of Ohio, September 30, 1886. The defendants thereto are the Pittsburgh, Cincinnati & St. Louis Railway Company and the Central Ohio Railroad Company, as reorganized, both being corporations of the state of Ohio. The object of the bill was to have an accounting as to the receipts from local freights earned on that part of the line jointly owned and operated between Newark and Columbus, Ohio, and known as the Newark & Columbus Division of each road. That division was originally owned by the Central Ohio Railroad Company, which company became insolvent, and was placed in the hands of a receiver. While thus in a receiver's hands, it, under a statute of Ohio, and with the approval of the court conducting the receivership, sold an undivided one-half interest in so much of its line as lay between Columbus and Newark to the Steubenville & Indiana Railroad Company. After this sale the presidents of the two companies entered into a written agreement as to the joint operation of the division so jointly owned. Subsequently the Central Ohio Railroad Company was reorganized under the laws of Ohio, under the name and style of the Central Ohio Railroad Company, as reorganized. Under the statute permitting this reorganization, the new company succeeded to all the property rights and contracts of the old company. In 1886 the Baltimore & Ohio Railroad Company, being the complainant corporation, leased the line of the Central Ohio Railroad Company, as reorganized, and succeeded to all its rights and liabilities. In 1868 the Steubenville & Indiana

Railroad Company was consolidated with two other lines of road under the name and style of the Pittsburgh, Cincinnati & St. Louis Railway Company, being the defendant corporation herein. Under the law of Ohio, it likewise succeeded to all the rights, property, and contracts of its several constituent roads. These two companies, the Pittsburgh, Cincinnati & St. Louis and the Baltimore & Ohio, have, since the 11th of May, 1868, the date of the creation of the Pittsburgh Company, been jointly operating, maintaining, and managing the said Columbus & Newark Division of said road.

The contention of complainant in this litigation is that a certain contract entered into between the Central Ohio Railroad Company and the Steubenville & Indiana Railroad Company, in 1865, and immediately after the sale of the one-half interest in the Columbus & Newark Division to the latter company, is still in force as originally executed. That contract and its amendments are very lengthy, and cover every possible question involved in a joint ownership and operation of a railroad. This controversy turns wholly upon clauses 13 and 15 of said contract, which are in these words: "Thirteenth. The local freight business from and to Newark and Columbus, with stations on the line of said road between those points, to be done by the Central Ohio Railroad Company." "Fifteenth. The general freight agent of the Central Ohio Railroad Company shall keep an account of the earnings arising from the local business mentioned in item thirteen, and at the end of each month shall furnish said superintendent and the general freight agent of the Steubenville & Indiana Railroad Company each with a duplicate thereof; and that for such service the Central Ohio Company shall receive sixty-five per centum thereof, and the remainder shall be divided between said companies equally."

The bill charges that the complainant company and the Pittsburgh, Cincinnati & St. Louis Railway Company both recognized the validity and binding obligation of the said contract, and continued to act thereunder until the month of June, 1872, "when the said defendant entered upon and commenced the business of carrying local freights between said cities and the stations on the said Columbus & Newark Division, and has continued to do so ever since, notwithstanding your orator has repeatedly objected to the said defendant engaging in such business, and has insisted that it, as the lessee of the Central Ohio Railroad Company, as reorganized, was entitled to carry all of the local freight thereon. And your orator has repeatedly offered to state an account with the said defendant, and render and deliver to it a statement of the local freights which it has during the term aforesaid carried, but the said defendant has repeatedly and persistently refused to recognize the right of your orator to have such accounting made, and has insisted that it has the right to engage in the business of carrying local freights as aforesaid; and neither the general freight agent of your orator nor of the said the Central Ohio Railroad Company, as reorganized, has been able to keep an account of the earnings arising from the business as hereinbefore stated, by reason of the refusal of the defendant to furnish the accounts as aforesaid."

With regard to the Central Ohio Railroad Company, as reorganized, the allegations of the bill are that, by the terms of the lease to the Baltimore & Ohio Railroad Company, the said Central Ohio Railroad Company, as reorganized, was entitled to receive 35 per cent. of the gross earnings of the said the Central Ohio Railroad Company, including the Columbus & Newark Division thereof, "and including the proper proportion of the earnings of the said Columbus & Newark Division under said contract with reference to the local freights and local passengers."

The prayer of the bill was that the total amount of local freights provided for in articles 13 and 15 of the alleged contract shall be "ascertained, and the amount which is due to your orator determined, as well as that which is due to the Pittsburgh, Cincinnati & St. Louis Railway Company, and to the defendant the Central Ohio Railroad Company, as reorganized, as the lessor of your orator." It prays that an account be taken under the order and direction of the court with reference to the local freights so as aforesaid carried, "and that your orator be allowed eighty-two and one-half per cent. of the total amount of freights carried by both of said parties, and that the defendant herein, the Pittsburgh, Cincinnati & St. Louis Railway Company, be allowed

seventeen and one-half per cent. of the total amount thereof, and that thirty-five per cent. of the amount allowed to your orator be awarded to be paid as rental to said defendant herein, the Central Ohio Railroad Company, as reorganized, and that upon the taking of said account the amount which is found due to either of said parties defendant, or your orator, be directed to be paid within the time to be specified by the court."

The Central Ohio Railroad Company answered, its answer being styled a cross petition. In this pleading it is set up that, at the time of the lease to the complainant, the contract between the Central Ohio Railroad Company and the Steubenville & Indiana Railroad Company was in full force, and that the complainant became the lessee of the said railway property subject to the terms of said contract, and that the complainant had no authority or power to make any change in said contract, "and that, if said contract was changed or to be changed, it could be done only by the Central Ohio Railway Company, by and through its president, properly authorized." It further set up that by reason of said contract and lease it was entitled to receive as rental 35 per cent. of the entire earnings of the said Columbus & Newark Division in carrying local freights thereon, less 17½ per cent. which, under said contract, was to be paid to the said Steubenville & Indiana Railroad Company, or its successor, the defendant herein, the Pittsburgh, Cincinnati & St. Louis Railway Company. It was further stated that since June, 1872, the defendant had received 35 per cent. of the local freights carried on said division by the plaintiff company, but had received no part of the earnings for local freight by reason of freight carried by said defendant, the Pittsburgh, Cincinnati & St. Louis Railway Company; and it says that it is entitled to receive now from the plaintiff 35 per cent. of the local freights carried by said Pittsburgh, Cincinnati & St. Louis Railway Company since June 18, 1872, and it asks that the said plaintiff be required to account to it for the same. It denies all knowledge that the Pittsburgh, Cincinnati & St. Louis Railway Company was engaged in the business of carrying local freight, and was not accounting to the complainant therefor, and that this defendant was receiving no part thereof, and avers that these facts only came to its knowledge in the past two or three years, and that it had in no manner assented or agreed with said Pittsburgh, Cincinnati & St. Louis Railway Company that it should engage in the business of carrying local freights, and in this manner impair the usefulness of said division to said defendant, and deprive it of the revenues that belong to it, and of which it is the exclusive owner, under its charter, as set out in complainant's bill of complaint.

This cross petition was answered only by the Pittsburgh, Cincinnati & St. Louis Railway Company, which denied all liability to the Central Ohio Railroad Company, or its lessee, the Baltimore & Ohio Railroad Company, and claimed that the said agreement as to the doing of the local freight business on the said Columbus & Newark Division had been abrogated June, 1872, and had never since been in force. No answer was filed by the Baltimore & Ohio Company, with whom an accounting was asked.

An accounting was ordered, and upon the final hearing the circuit court decreed that there was due from the Pittsburgh, Cincinnati & St. Louis Railway Company to the complainant the sum of $2,748.31, with interest; and to the respondent the Central Ohio Railroad Company, as reorganized, the sum of $10,341.40, with interest. From this decree the Pittsburgh, Cincinnati & St. Louis Railway Company has appealed and assigned errors.

Harrison, Olds & Henderson, for appellant.

J. H. Collins, for appellees.

Before TAFT and LURTON, Circuit Judges, and BARR, District Judge.

LURTON, Circuit Judge (after stating the facts). A preliminary question is made by the Baltimore and Ohio Railroad Company. It insists that the decree appealed from was not the final decree; that a final decree was pronounced June, 1890, and a supplemental decree

June, 1893; that the appeal was from this last decree, and that the questions settled by the former decree of June, 1890, cannot be reviewed, because there was no appeal from it within the time allowed by law. The decree of June, 1890, was purely interlocutory. The cause was then heard upon the pleadings and proof, and the principles upon which the account should be taken determined, and a reference made to a master to take and state an account upon the basis therein directed. Upon the coming in of the account so ordered, exceptions were filed. These were then considered by the court. Some were sustained, others overruled. The account was restated in accordance with these rulings, and a final decree pronounced, from which a broad appeal was prayed and granted. This appeal opens up the whole case.

A decree determining the right of a complainant to an account. and settling the principles upon which the account should be taken, is an interlocutory decree from which no appeal lies. A decree of like character was appealed from in Perkins v. Fourniquet, 6 How. 206. The appeal was dismissed as premature. The opinion was by Taney, C. J., who said:

"This clearly is not a final decree in any respect. It is the common and ordinary interlocutory order or decree passed by courts of chancery in cases of this kind, and is absolutely necessary to prepare the case for a final hearing and final decree, wherever the complainant is entitled to a partition of property or an account. For the principles upon 'which an account is to be stated by the master, or a partition made, cannot be prescribed by the court until it first determines the rights of the parties by an interlocutory order or decree; and the case cannot proceed to final hearing without it. And the appellant is not injured be denying him an appeai in this stage of the proceedings, because these interlocutory orders and decrees remain under the control of the circuit court, and subject to their revision, until the master's report comes in and is finally acted upon by the court, and the whole of the matters in controversy between the parties disposed of by a final decree. And, upon an appeal from that decree, every matter in dispute will be open to the parties in this court, and may all be heard and decided at the same time.'"

Upon the coming in of the account so ordered, it was entirely in the power of the circuit court to change its opinion from that expressed in the interlocutory opinion, and dismiss the bill. This question was expressly decided on a second appeal in the case of Perkins v. Fourniquet, above cited. See, also, Fourniquet v. Perkins, 16 How. 82.

Another preliminary question remains to be decided before the merits of the case can be considered. Did the circuit court have jurisdiction of the controversy arising on the pleadings? Is the real controversy wholly between the complainant on one side and the two defendant corporations on the opposite side? The complainant corporation is a citizen of the state of Maryland. The two defendant corporations are citizens of the state of Ohio. Was the Central Railroad Company, as reorganized, either a proper or necessary party? The final decree would seem to indicate that the interest of the Baltimore & Ohio Company and those of the Central Company were common interests,—that the rights of each depended upon the same questions. In determining a question of jurisdiction, where it depends upon citizenship, it is unimportant

that the pleader has put a particular party upon the one or the other side of the case. Jurisdiction in such cases depends, not upon an arbitrary arrangement of the parties made by the pleader, but upon their arrangement according to interest. If, when arranged by interest in the litigated question, all on one side are citizens of a state other than that of those on the other side, then jurisdiction exists. Removal Cases, 100 U. S. 457.

In Railroad Co. v. Ketchum, 101 U. S. 289, the construction placed on the second section of the act of March 3, 1875, in regard to the removal of causes, was declared to be applicable to the first section concerning suits originally brought in the courts of the United States. In that case the court said:

"The same general language is used in the second section of the same act in respect to the removal of suits from the state courts, and in Removal Cases, 100 U. S. 457, we held it to mean that, when the controversy about which the suit was brought was between citizens of different states, the courts of the United States might take jurisdiction without regard to the position the parties occupied in pleadings as plaintiffs or defendants. For the purpose of jurisdiction the court had power to ascertain the real matter in dispute, and arrange the parties on one side or the other of that dispute. If in such arrangement it appeared that those on one side were all citizens of different states from those on the other, jurisdiction might be entertained and the cause proceeded w' h. That ruling, we think, applies as well to the first section as to the second."

What is the matter in dispute? The questions all arise out of a contract originally between the Central Ohio Railroad Company on the one side and the Steubenville & Indiana Railroad Company on the other. The bill shows that the defendant the Pittsburgh, Cincinnati & St. Louis Railway Company has succeeded to all the property interests and contract rights of the latter company. It sets out that:

"Under the terms of the lease executed by the said the Central Ohio Company, as reorganized, it took possession of the said Central Ohio Railroad, and the said Columbus and Newark Division thereof, subject to the terms of the said contract, * * * and was entitled to all the privileges and subject to all of the terms thereof, the same as its lessor had previously been."

It further alleged that:

"By the terms of the said lease, the said Central Ohio Railroad Company, as reorganized, was entitled to receive 35 per cent. of the gross earnings of the said the Central Ohio Railroad, including the Columbus and Newark Division thereof, and including a proper proportion of the earnings of the said Columbus and Newark Division under said contract with reference to the local freight and local passengers."

It then states that the obligations of the said contract had been recognized by complainant and by the defendant the Pittsburgh, Cincinnati & St. Louis Railroad Company, and acted under until June, 1872, when the said defendant commenced the business of carrying local freight, contrary to said agreement, and has continued to do so ever since, notwithstanding objections and protests by complainant, and that it has refused to account for the business so done and the earnings so arising. From all of which the complainant insists it is "entitled to have an accounting between the defendant herein, the Pittsburgh, Cincinnati & St. Louis Railway Company, and its codefendant, the Central Ohio Railroad Company,

as reorganized, and your orator, in order that the total amount
of local freights provided for in articles thirteen and fifteen of the
said Exhibit B shall be ascertained, and the amount which is due
to the Pittsburgh, Cincinnati & St. Louis Company, and to the de-
fendant the Central Ohio Railroad Company, as reorganized, as the
lessor of your orator." It concludes with a prayer for an account
as follows:

"And your orator prays that an account be taken under the order and di-
rection of this honorable court, with reference to the local freights so as
aforesaid carried, and that your orator be allowed eighty-two and one-half
per cent. of the total amount of freights carried by both of said parties, and
that the defendant herein, the Pittsburgh, Cincinnati & St. Louis Railroad
Company, be allowed seventeen and one-half per cent. of the total amount
thereof, and that thirty-five per cent. of the amount allowed to your orator
be awarded to be paid as rental to the said defendant herein, the Central Ohio
Railroad Company, as reorganized, and that, upon the taking of said accounts,
the amount which is found due either of said parties defendants or your
orator be directed to be paid within a time to be specified by the court, and,
in default of such payment, that execution issue as at law, and your orator
prays for such other and further relief as may be deemed best and proper
in the premises."

The Central Ohio Company, thus made a defendant, waived serv-
ice of process, and entered its appearance by an indorsement on
the original bill signed by the solicitor for the complainant company
as president of the said Central Ohio Company. Its answer was
subsequently prepared by the same solicitor, and signed by him as
president. This answer admits all the statements of the complain-
ant's bill, and sets up that, under the said contract and lease, "it
was entitled to receive as rental 35 per cent. of the entire earnings
of said Columbus and Newark Division, in carrying local freights
thereon, less seventeen and one-half per cent., which, under the said
contract contained in Exhibit B, attached to complainant's bill,
was to be paid to the said Steubenville & Indiana Railroad Com-
pany, and its successor, the defendant herein, the Pittsburgh,
Cincinnati & St. Louis Railway Company." It admitted the re-
ceipt of 35 per cent. of the local freights carried on said division by
the complainant company, but asserted that since June, 1872, it
had received no part of the earnings for local freights carried by
the Pittsburgh, Cincinnati & St. Louis Railway Company, and
averred that it was "now entitled to receive from the plaintiff thir-
ty-five per cent. of the freight so earned by the said Pittsburgh,
Cincinnati and St. Louis Company," and it asks that "the said com-
plainant be required to account to it for the same." It charges that
the lease was subject to the said contract, and avers "that the said
complainant had not any authority or power to make any change
in said contract, and if said contract was changed, or to be changed,
it could be done only by this defendant, by and through its presi-
dent, properly authorized." It denies knowledge that the Pitts-
burgh, Cincinnati & St. Louis Railway Company had been engaged
in carrying local freights, and that it was not accounting for same,
and averred that until within "two or three years it did not know
that its rental embraced nothing on account of freight carried by
the said Pittsburgh Company;" and denied that it had ever "agreed

or assented to said company engaging in carrying said local freight, and in this manner impair the usefulness of said division, and deprive it of a part of the revenues which belonged to it, and of which it is the exclusive owner under its charter, as set out in the complainant's bill of complaint." This answer was indorsed as an answer and cross petition. No one seems to have been made defendant thereto, and no process issued, none being asked. The Pittsburgh, Cincinnati & St. Louis Railway Company alone answered it as if a formal cross bill. The Pittsburgh, Cincinnati & St. Louis Railway Company, in its answer, took issue upon every proposition of importance, denied any liability to the said Central Ohio Company, and set out the defenses made in its answer to the original bill. The chief of the defenses thus presented was that in June, 1872, the clauses in regard to the local freight business had been by agreement with the complainant company abrogated and set aside, and an agreement entered into that said local freight business should be done by either company, and revenue derived therefrom be retained by each company; that this agreement had been put in force by an official order issued in June, 1872, by the complainant company, and that from that time each road had done local business, and retained the revenue. That no objection, protest, or question had been made to this modification of the original agreement until after the agreement had been in force for more than 10 years. The defense of ultra vires was also set up as to the clauses which prevented either company from carrying local freight when tendered, or from offering to carry such freight. Still another defense denied that the contract had ever been signed or legally executed by the original contracting parties. If valid, that corporation insisted that the successor companies had the power to modify or abrogate the clauses in question, and this power had been exercised with the knowledge and assent of the Central Ohio Company.

Upon this jurisdictional question the learned counsel for appellees contends that the original bill presents two distinct subjects of controversy,—one wholly between the complainant and the Pittsburgh, Cincinnati & St. Louis Company, and the other wholly between the complainant and the Central Ohio Company. That in the accounting asked with the Pittsburgh, Cincinnati & St. Louis Railway Company the Central Ohio Company has no interest; and that in the accounting as to rentals since 1872, between complainant as lessee and the Central Ohio Company as lessor, the Pittsburgh, Cincinnati & St. Louis Railway Company has no interest. That all the issues in regard to the due execution of the original agreement of 1865, and in regard to the power of the successor company to modify same, and in regard to the validity of clauses 13 and 15 of that contract, as well as the issue as to the fact of modification, are issues wholly between complainant and the Pittsburgh, Cincinnati & St. Louis Railway Company, with which the Central Ohio Company has no concern. To save the jurisdiction, counsel in effect argue that the bill was multifarious. We are unable to concur with the contention that the Central Ohio Company has no concern in the issue between the companies succeeding to the rights

and obligations of the contract of 1865. If the contract of 1865 was never validly executed, then the successor companies did not, by mere succession, become obligated. If clauses 13 and 15 were void, as beyond the power of the contracting companies, then the Pittsburgh, Cincinnati & St. Louis Railway Company cannot be compelled to account for freights earned by it in contravention of a void contract; and, for the same reason, the claim of the Central Ohio Company to 35 per cent. of the gross receipts from freights carried by the Pittsburgh, Cincinnati & St. Louis Railway Company must fail. So, if the successor companies had the power to abrogate, abandon, or modify clauses 13 and 15, and did in fact lawfully abandon, abrogate, or modify those provisions, then the claim of the Central Ohio against either of the successor companies falls to the ground.

The Central Ohio was, perhaps, an unnecessary party. Still, in view of its interest in the maintenance of clauses 13 and 15, as affecting the amount of its income as rentals from its lessee, and of its contention that those clauses could not be abandoned, abrogated, or modified by the successor companies, unless it should assent, it was clearly proper that it should be a party to a controversy so vitally affecting its interests. By bringing it before the court a decree could be obtained which would conclude its claims as lessor or owner, and establish, once for all, the soundness or unsoundness of its contention as to the original validity and irrevocable character of the agreement of 1865 by any arrangement between the successor companies to which it did not assent. In view of this attitude of the Central Ohio toward the issues presented, we cannot say that it was an immaterial party. It certainly was not so regarded by the other litigants nor by the circuit court. Being a proper party, and a party whose interests in the controversy were identical with those of the Baltimore & Ohio Company, it makes a cause in which a corporation of Maryland and a corporation of Ohio are on one side of the controversy, while another corporation of Ohio is a party upon the opposite side. This arrangement operates to deprive the federal court of jurisdiction. The very late case of Wilson v. Oswego Tp., 14 Sup. Ct. 259, is a case much in point. There federal jurisdiction was held to be defeated as to a defendant whom the court thought an unnecessary party to the relief sought by the complainant, yet a proper party because of its interest in the controversy. We are clearly of opinion that, while the Central Ohio was not a necessary party to the accounting between the Baltimore & Ohio Railroad Company and the Pittsburgh, Cincinnati & St. Louis Railway Company, yet it was, in view of its interest in the issues arising upon that account, a proper party.

The decree must be reversed, with directions to the circuit court to dismiss the bill with costs.