STEPHENS et al. v. SMARTT et al.

FINLEY v. WILLIAMS et al.

(Circuit Court, E. D. Tennessee.    August 9, 1909.)

Nos. 1,043, 1,046.

1. EQUITY (§ 213*)—PLEADING—PLEA—SETTING DOWN FOR HEARING.
    Where a complainant has set a plea down for argument, not having taken issue thereon, all material and pertinent statements of fact therein are admitted, however inconsistent they may be with the allegations of the bill.
    [Ed. Note.—For other cases, see Equity, Cent. Dig. § 486; Dec. Dig. § 213.*]

2. COURTS (§ 317*)—JURISDICTION OF FEDERAL COURT—DIVERSITY OF CITIZENSHIP—REALIGNMENT OF PARTIES.
    Complainant, a citizen of Georgia, as a member of a church corporation of Tennessee, brought suit in a federal court against the corporation, its governing officers, and other members, alleging that the latter, by reason of an attempted merger of the church with another organization, to which they did not consent, claimed to be entitled to control the corporation and, its property, to the exclusion of the officers, and that such officers refused to bring suit to protect the church and its·property rights.   The bill prayed a decree adjudging that defendant officers were entitled, as representatives of the majority of the membership, to sole control of the church and its property.   Held, that the real controversy was between such officers and their codefendants, all of whom were citizens of Tennessee, and that, when the officers were aligned as complainants, as required by·their interest, the court was without jurisdiction for want of diversity of citizenship.
    [Ed. Note.—For other cases, see Courts, Dec. Dig. § 317.*
    Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mann v. Dullaghan,.27 C. C. A. 298.]

3. COURTS (§ 316*)—JURISDICTION OF FEDERAL COURTS—COLLUSIVE ARRANGEMENT OF PARTIES.
    Where the arrangement of parties to a suit in a federal court is merely a contrivance between friends having no real antagonism, to give the court jurisdiction and avoid the effect of state decisions, the suit will be dismissed as collusive, although, if the controversy were real, it would have jurisdiction.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 862; Dec. Dig. § 316.*]

In Equity.   On pleas to jurisdiction and motions for preliminary injunction.

Wheeler & Trimble, for complainants.

Brown & Spurlock and Pritchard & Sizer, for defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date,·& Rep'r Indexes

SANFORD, District Judge. These consolidated causes were heard on the pleas in abatement, which had been set down for argument by the complainants under the thirty-third equity rule, and on the complainants' motions for preliminary injunctions.

## Finley v. Williams et al.

The bill in this case was filed by Finley, a citizen of Georgia, against Williams and 14 other individuals, all citizens of Tennessee, and the First Cumberland Presbyterian Church of Chattanooga, Tenn., a corporation under the laws of Tennessee. It avers:

That complainant is a member of said church, and a regular attendant on its religious services; that said church is the owner of a house of worship and parsonage in the city of Chattanooga, which, with the lot upon which they stand, are worth as much as $25,000; that the defendant Smartt and six others of the individual defendants are the ruling elders of said church, charged with maintaining the spiritual government of the congregation; and that the defendant Smartt and four others of the individual defendants, including two others of said elders, are the trustees and directors of said church, and as such are its representatives as respects its relation as a body to the civil law and charged with the preservation and assertion of its legal rights.

That prior to 1904 said church was a congregation of the religious denomination known as the "Cumberland Presbyterian Church," which had been organized and formed in the early part of the last century by reason of a schism in and secession from the general church known as the "Presbyterian Church in the United States of America"; that, the said Presbyterian Church in the United States of America having some years hence adopted certain modifications or, interpretations of its "standards"—that is, of its constitution and laws —which removed all the differences concerning interpretation of "standards" which had kept said church and the said Cumberland Presbyterian Church apart for nearly a century, said two churches were thereafter, through the action of their respective constituted authorities, reunited in one organization exactly as they had existed before the breach, such reunited church bearing its ancient name, and its highest judicature being called the "General Assembly of the Presbyterian Church in the United States of America."

That a majority of the members of the defendant church, and all its officers except the defendant F. A. Seagle, who was an elder, acquiesced in said reunion, and have continued to attend upon said church; that the defendant Smartt and said other seven defendants are now, as they were before, its lawful elders and directors; that all persons who have been admitted to its membership and have not withdrawn or been dismissed therefrom, including the complainant, who was admitted to membership after the reunion, are the true and only First Cumberland Presbyterian Church of Chattanooga, and the equitable and beneficial owners of its real estate, entitled to have it preserved and protected for their use as heretofore, and as a residence for their minister.

That after the adjournment of the last General Assembly of the separate Cumberland Presbyterian Church a minority of its former dele-

gates or commissioners met and organized themselves into a body which they called the "General Assembly of the Cumberland Presbyterian Church"; and that after the formation of this new Cumberland Presbyterian General Assembly the defendant Seagle and four other individual defendants, with other persons, seceded from said First Cumberland Presbyterian Church at Chattanooga and formed a congregation which has since conducted religious services in another building, and which claims to be the First Cumberland Presbyterian Church at Chattanooga, and to be connected with said new Cumberland Presbyterian General Assembly, and refuses to recognize the authority of the General Assembly of the Presbyterian Church in the United States of America.

That while neither the defendant Seagle nor his associates are officers or members of the defendant church, or recognized as such by its ecclesiastical authorities, and have no right to interfere with or control its properties, the defendant Seagle and the four defendants associated with him are refusing to recognize the defendants, who are the sole ruling elders of said church, and pretending without right to be officers of the defendant church, and threatening to take unlawful possession of its house of worship, parsonage, and grounds, and prevent its rightful pastor from ministering therein, and, when they have obtained such possession, will oust the pastor and elders of said church, and those who have a right to attend upon their ministrations, and will divert its property from the use of its congregation and members, and turn it over to the use of a different congregation and pastor.

That while it is the duty of the defendant Smartt and the other defendants who are officers of the defendant church, as its elders, trustees, and directors, to protect its property and the rights of complainant and the other members of the church from the unlawful acts threatened and about to be done by the defendant Seagle and others, by such proceedings in the courts as will prevent the same, and while complainant has demanded and repeatedly urged that they take such legal action as may be necessary to that end, they have refused to take such action, answering complainant that, because of a decision in the Tennessee courts in another case not concerning this property or these parties, such steps are useless and the case hopeless, and that a compromise or adjustment is desirable; that it has been announced in alleged newspaper interviews with some or all of said officers of the church that they intend to submit to the intended wrongful acts of the defendant Seagle and others, without any effort to protect either their rights or those of their cestui que trust, the complainant, and all others in like situation with him; that the defendants Smartt and other officers further caused a meeting of said church congregation to be held, at which they recommended that no legal steps be taken to protect their rights, but that, on the contrary, efforts of compromise be made, and that the members of the congregation passed a resolution in accordance with such recommendation, all present either voting for such resolution or remaining silent, except the complainant, who publicly notified said officers and members that he insisted upon action being taken, and intended to take such legal steps as were in his power to protect the rights of the members

and the property of the church; and that, notwithstanding the demand and notice of complainant, and the evident fact that the defendants Seagle and others will not agree to any compromise, the defendant Smartt and other officers have taken no action, and indicate that they do not intend to make any defense, should suit be brought against them.

The complainant prays: That it be decreed that the defendants Smartt and other trustees and directors of said church, and the defendant corporation, hold title to the church property for the exclusive use and benefit of the congregation of said church which adheres to said United Church, and that its session, consisting of its pastor and the defendants Smartt and other ruling elders, has the exclusive right to control the possession and use of its property, and its pastor the sole right to occupy its pulpit and conduct its services; that the defendants Seagle and associates, all persons acting under their authority, and all members of the other congregation whom they represent, be enjoined and restrained from taking any steps, by forcible entry, legal proceedings, or otherwise, to take possession or control of the church property, from resisting or obstructing complainant and others in like situation with him from free access to and use of said church property for the purpose of religious worship and all its former uses and purposes, from attempting to interfere with its pastor in the conduct of its religious exercises or other pastoral functions, or with the defendants Smartt and other elders, trustees, and directors, in the control and management of said property for the use and benefit of complainant and others in like situation, from disturbing or interfering with complainant and the pastor, congregation, officers, or members of the defendant church in the possession, use, or enjoyment of the church property, and from bringing any other suit in relation to the title or possession of said property; and that the defendants Smartt and other officers of said church be enjoined and restrained from surrendering possession or control of said property to the defendants Seagle and others, or any of their associates.

The plea in abatement of the defendant Seagle and the four other defendants associated with him alleges that there is no such diversity of citizenship of the parties as is necessary to give this court jurisdiction of this cause, and avers:

That at the time of the attempted merger of the Cumberland Presbyterian Church in the Presbyterian Church in the United States of America, whose validity was denied by many members of the Cumberland Presbyterian Church, they were members of the Cumberland Presbyterian Church and of the congregation of the defendant church at Chattanooga, and refused to assent to said merger, and denied its validity, while the defendant Smartt and six of the other defendants described in the bill as the officers of said church, who were also members of said church and congregation at that time, acquiesced in said merger and asserted its validity.

That in the controversies growing out of said attempted merger those members of the Cumberland Presbyterian Church who denied its validity contended that they continued to be members of the Cumberland

Presbyterian Church, notwithstanding the attempted merger, and as such were entitled to the possession, use, and control of its property, and that those who had united with the Presbyterian Church had lost and surrendered all their right, claim, and interest in such property, while those who asserted the validity of the merger contended that it had obliterated the Cumberland Presbyterian Church, and transferred and merged all of its property and membership in the Presbyterian Church, and that those who denied its validity had ceased to be members of the Presbyterian Church and had organized themselves into a new religious denomination.

That as a result of the attempted merger and of these contentions litigation arose in the state courts of the different states in which the properties of the church were located, involving the rights of the different factions to the possession, control, and use of such properties; that, among others, two suits were brought in the chancery courts of Tennessee by members of the faction asserting the validity of the merger against members denying its validity, to recover the possession of church properties at Fayetteville and Jackson, Tenn., in each of which the validity of the merger was asserted by complainants as a source of their title and was denied by the defendants, and that in each of these cases it was held by the Supreme Court of Tennessee, on appeal, that the proceedings whereby it had been sought to unite the two churches were not effective to merge the Cumberland Presbyterian Church into the Presbyterian Church in the United States of America, that the Cumberland Presbyterian Church remained an independent organization, with which the defendants were truly identified, that the complainants were not so identified, but had united themselves with another and different ecclesiastical organization, and that the defendants were entitled to the church property and the complainants had no interest therein.

That the claim of complainant to the possession, control, and use of the properties described in the bill is based on said alleged merger or union of churches, and he has no other right, title, claim, or interest to said property, or any right to interfere with or disturb the defendants in its possession, use, and control, except by virtue thereof; that the complainant is identified in interest, sentiment, and legal status with the defendant J. P. Smartt and six of the other defendants alleged in the bill to be the officers of the defendant church, and there is no hostility or conflict of interest between complainant and said defendants; that complainant by his bill is suing to enforce an alleged right of action vested primarily in said defendants; that complainant must be arranged on the same side of the controversy with said defendants, all of whom are citizens of Tennessee, and that when so aligned citizens of Tennessee are found on both sides of the controversy and this court has no jurisdiction thereof; that the institution of this suit in the name of complainant and the placing of his colleagues and sympathizers on the defendants' side of the controversy is a collusive device and a mere contrivance between friends to found jurisdiction in this court, in the hope of avoiding the effect of said decision of the Supreme Court of Tennessee, and in order to reopen in this court a controversy which has been finally decided in the state courts; and

that the complainant has recently moved from Chattanooga to Rossville, Ga., a suburb of Chattanooga, just across the state line, in order to ostensibly become a citizen of Georgia, so that he might bring this suit in this court—it being, however, stated at bar by the solicitors for the defendants Seagle and others that this last averment in the plea was not made or intended as a denial of the citizenship of complainant as alleged in the bill, but only as bearing on the question of collusive joinder of parties.

The complainant not having taken issue on the plea in abatement, but having set it down for argument, the truth of all statements of fact contained in the plea, material and pertinent to the issue raised by it, is thereby admitted (Kellner v. Insurance Co. [C. C.] 43 Fed. 623), however inconsistent with or contradictory of the allegations of the bill (United States v. Telephone Co. [C. C.] 29 Fed. 17, 33; 1 Beach, Mod. Eq. Pract. p. 348, § 36).

Upon the facts thus admitted I am of the opinion that the plea is sufficient in law and should be allowed.

It is provided by Judiciary Act March 3, 1875, c. 137, § 5, 18 Stat. 472 (U. S. Comp. St. 1901, p. 511):

"That if, in any suit commenced in a Circuit Court * * * it shall appear to the satisfaction of said Circuit Court * * * that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable * * * under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit. * * * "

It is well settled that in a case where the jurisdiction of the Circuit Court depends solely upon diversity of citizenship, in determining whether it really or substantially involves a dispute or controversy within the jurisdiction of the court, under section 5 of the act of 1875, the court may ascertain the real matter in dispute, and, disregarding the arbitrary arrangement of the parties made by the pleader, may arrange them upon the side where their interest in and attitude to the controversy really places them, and that if, upon such realignment, citizens of the same state are found to be upon opposite sides of the controversy, so that the necessary diversity of citizenship does not exist, the suit should be dismissed for want of jurisdiction. Removal Cases, 100 U. S. 457, 25 L. Ed. 593; Pacific Railroad Co. v. Ketchum, 101 U. S. 289, 25 L. Ed. 932; Harter Tp. v. Kernochan, 103 U. S. 562, 26 L. Ed. 411; Wilson v. Oswego Township, 151 U. S. 56, 14 Sup. Ct. 259, 38 L. Ed. 70; Merchants' Cotton Press Co. v. Insurance Co., 151 U. S. 368, 14 Sup. Ct. 367, 38 L. Ed. 195; Evers v. Watson, 156 U. S. 527, 15 Sup. Ct. 430, 39 L. Ed. 520; Dawson v. Columbia Trust Co., 197 U. S. 178, 25 Sup. Ct. 420, 49 L. Ed. 713; Venner v. Great Northern Ry. Co., 209 U. S. 24, 28 Sup. Ct. 328, 52 L. Ed. 666; Steele v. Culver, 211 U. S. 26, 29 Sup. Ct. 9, 53 L. Ed. 74; Pittsburg Ry. Co. v. Baltimore R. R. Co., 61 Fed. 705, 10 C. C. A. 20; Act March 3, 1875, § 5, 18 Stat. 472.

And in determining such jurisdictional question, while the citizenship of merely formal and nominal parties, having no substantial interest in

the controversy, will not defeat jurisdiction otherwise attaching over a controversy between the real litigants having the requisite diverse citizenship (Browne v. Strode, 5 Cranch, 303, 3 L. Ed. 108; McNutt v. Bland, 2 How. 15, 11 L. Ed. 159; Walden v. Skinner, 101 U. S. 577, 25 L. Ed. 963), yet a stakeholder or active trustee, having a duty to perform which the court may enforce, is not a mere formal or nominal party whose citizenship can be disregarded in determining such jurisdictional question (Wood v. Davis, 18 How. 467, 470, 15 L. Ed. 460; Wilson v. Oswego Township, 151 U. S. 56, 64, 14 Sup. Ct. 259, 38 L. Ed. 70; Shipp v. Williams, 62 Fed. 4, 7, 10 C. C. A. 247; Tug River Coal Co. v. Brigel, 67 Fed. 625, 628, 14 C. C. A. 577). And in a suit to recover the possession of property the one in possession is a necessary and indispensable, and not merely a formal, party. Construction Co. v. Cane Creek, 155 U. S. 283, 15 Sup. Ct. 91, 39 L. Ed. 152.

Furthermore, in a suit involving the original jurisdiction of a Circuit Court—as distinguished from a removal case involving the question of a separable controversy—the citizenship of a party who is not merely a formal party, but a proper party having a material interest in the question in dispute, although not an indispensable party, cannot be disregarded in determining the jurisdictional question. Pittsburg Railway Co. v. Baltimore & Ohio R. R. Co., 61 Fed. 705, 712, 10 C. C. A. 20. See, also, Stewart v. Mitchell (U. S. C. C., W. D. Tenn., Mem. Op., May 24, 1909) 172 Fed. 905. So, where a proper, though not a necessary, party, not having the requisite diverse citizenship, has joined as complainant in a suit, this likewise destroys the federal jurisdiction. Peninsular Iron Co. v. Stone, 121 U. S. 631, 633, 7 Sup. Ct. 1010, 30 L. Ed. 1020.

And where in an equity cause in the Circuit Court a party, whose original alignment as a complainant would have defeated the federal jurisdiction, has been impleaded as a defendant because of his refusal to join in the suit or to take other necessary action, but it appears that the real interest of such defendant is on the side of the complainant, and that he is not in actual antagonism to the complainant, or acting adversely to him in subservience to some illegal or fraudulent purpose (Doctor v. Harrington, 196 U. S. 579, 25 Sup. Ct. 355, 49 L. Ed. 606; Venner v. Great Northern Ry. Co., 209 U. S. 24, 28 Sup. Ct. 328, 52 L. Ed. 666), or in good faith opposed to the bringing of the suit on account of its supposed injurious effects on his own interests (Chicago v. Mills, 204 U. S. 321, 27 Sup. Ct. 286, 51 L. Ed. 504), such defendant, although refusing to join in the suit or take other action, is nevertheless, in the absence of such antagonism or opposition, to be realigned upon the same side of the controversy with the complainant, in accordance with his real interest, and the suit must thereupon be dismissed for want of the requisite diversity of citizenship.

Thus a federal court has no jurisdiction of a bill brought by a nonresident beneficiary under a trust deed against the debtor and trustees, for the purpose of foreclosing the trust, when the debtor and trustee are all citizens of the same state, even although the trustees were made defendants because, after being twice enjoined in the state chancery court from selling the property in execution of the trust, they had

refused to further exercise their duties as trustees or to allow their names to be used for purposes of foreclosure, since they are nevertheless to be aligned on the same side of the case with the beneficiary, according to their interest, and the requisite diversity of citizenship is thereby destroyed. Shipp v. Williams, 62 Fed. 5, 10 C. C. A. 247. And for like reason a federal court would not have jurisdiction of a bill brought by a nonresident bondholder against the debtor and trustee for the sole purpose of foreclosing the trust deed, where the debtor and trustee are citizens of the same state, even although the trustee had for personal reasons determined not to execute the trust and declined to join as a party bringing suit, as this would "be insufficient to show any real antagonism" between the complainant and the trustee, and would require that he be treated as on the same side of the controversy with the complainant, although, where the bill goes further and seeks a decree excluding all other bondholders from equal benefits of the trust, this presents a controversy in which the trustee, as representing all the bondholders, must stand in antagonism to the exclusive claim set up by a single beneficiary, and should not be treated as upon the same side with him (First Nat. Bank v. Trust Co., 80 Fed. 569, 574, 26 C. C. A. 1); this last situation being obviously entirely different from that in the case at bar, in which the defendant Smartt and other officers of the church represent only the complainant and those associated with him in the church dispute, and do not represent or owe any duty to the defendant Seagle and others, who refuse to recognize their authority and claim to be the real officers of the church in their stead. And where a bill is brought by a nonresident mortgagee of a water company against the company and the city in which it is located, both being corporations of the same state, to enjoin the enforcement of unjust demands to which the company is subjected by the city and to which it has yielded, so as to render its right to recover at law contestable, but no act of hostility on the part of the company toward the complainant is alleged, the water company and the complainant must be aligned on the same side of the controversy according to their real interest and the suit dismissed for want of jurisdiction. Boston Safe Deposit Co. v. City of Racine (C. C.) 97 Fed. 817.

A federal court is likewise without jurisdiction of a suit brought by a nonresident legatee against the executors of the will and other legatees who are citizens of the same state, where the interest of such other legatees in the matter in controversy is identical with those of the plaintiff, and they are made defendants only on the allegation that they refuse to join as plaintiffs. Johnson v. Ford (C. C.) 109 Fed. 501. So, "in a suit in equity instituted by a stockholder in his own name, but upon a right of action existing in his corporation, the stockholder's corporation will be aligned with the defendants whenever the officers or persons controlling the corporation are shown to be opposed to the object sought by the complaining stockholder, and * * * when such opposition does not appear, the stockholder's corporation will be aligned with the complainant in the suit." Groel v. United Electric Co. (C. C.) 132 Fed. 252, 263.

And in a suit by bondholders to foreclose a mortgage, trustees who are made defendants upon the mere allegation that, being requested to

take proceedings to foreclose the mortgage and doubting their right so to do, they preferred not to take such proceedings, and who voluntarily arrange themselves on the same side of the controversy with the complainants, no antagonism on their part being alleged or appearing, are to be considered as on the same side of the controversy with complainants in determining the question of federal jurisdiction. Pacific R. R. Co. v. Ketchum, 101 U. S. 289, 299, 25 L. Ed. 932. And, in general, a federal court has no jurisdiction of a suit where jurisdiction depends on a diverse citizenship alone, and citizens of the same state are parties on opposite sides, "with interests so conflicting that the relief prayed cannot be had without keeping them on opposite sides of the matter in dispute." Peninsular Iron Co. v. Stone, 121 U. S. 631, 633, 7 Sup. Ct. 1010, 30 L. Ed. 1020.

Furthermore, even in cases where, if the controversy were real, the requisite diversity of citizenship would exist, yet if it appear that the arrangement of the parties is merely a contrivance between friends having no real antagonism, for the purpose of founding a jurisdiction in the federal court which otherwise would not exist, and solely to reopen a controversy already decided in the state courts, the device cannot be allowed to succeed, and the suit must be dismissed as collusive under the second provision in section 5 of the act of 1875. Dawson v. Columbia Trust Co., 197 U. S. 178, 181, 25 Sup. Ct. 420, 49 L. Ed. 713, and cases cited. See, also, Detroit v. Dean, 106 U. S. 537, 541, 1 Sup. Ct. 500, 27 L. Ed. 300, Kemmerer v. Haggerty (C. C.) 139 Fed. 639, and Stewart v. Mitchell, supra.

Applying the foregoing principles to the facts admitted under the pleadings in this case, I am of opinion:

(1) That independently of any question of collusion, the real matter in dispute in this case is whether the properties of the defendant church are to be controlled by the officers representing those members who have recognized the validity of the merger between the Cumberland Presbyterian Church and the Presbyterian Church in the United States of America, and for the use and benefit of such members, or by the officers representing those members who deny the validity of such merger and for their use and benefit; that in determining such dispute the defendant Smartt and other officers of the defendant church, who are in possession of its properties and controlling them for the use and benefit of the members who recognize the validity of the merger, are necessary parties, and, if not indispensable parties, are at least proper parties, having a material interest in the controversy, both as officers and as members of the church; that in determining such dispute they must be aligned on the same side of the controversy with the complainant, with whom they are identified in interest, sentiment, and legal status, who is one of the class of members for whose use and benefit they are controlling and using the church properties, and to whom they have no hostility or conflict of interest, and on the opposite side of the controversy from the defendant Seagle and others, who claim to be the real officers of the church in their stead, and to be entitled to control and use its properties for the benefit of another and antagonistic class of members; that such realignment is not prevented by the fact that, properly recognizing the binding effect of

the decision of the Supreme Court of Tennessee upon the state courts, they have in the exercise of a sound discretion declined to bring suit in such courts, and have evidently likewise realized that their own citizenship prevented them from maintaining or joining in an action in the federal court, although they do not appear to be opposed to such suit if it can be maintained by others; and that, as such realignment places the defendants Smartt and other citizens of Tennessee on opposite sides of the real controversy from the defendant Seagle and other citizens of Tennessee and the requisite diversity of citizenship is thereby destroyed, it must be held that the suit does not really and substantially involve a controversy properly within the jurisdiction of the court, and the plea in abatement must for that reason be held sufficient in law; and—

(2) That as the complainant, by setting down the plea for argument, has likewise admitted for the present purpose its averments that the institution of this suit in the name of the complainant and the placing of his colleagues and sympathizers on the defendants' side of this controversy is a collusive device and a mere contrivance between friends to found jurisdiction in this court, in the hope of avoiding the effect of the decision of the Supreme Court of Tennessee and reopening in this court a controversy finally decided in the state courts, which must be deemed averments of fact, just as the converse averment that a suit was not collusive was inferentially treated in Doctor v. Harrington, 196 U. S. 579, 588, 25 Sup. Ct. 355, 49 L. Ed. 606, it follows that under such admission the plea in abatement must be held sufficient in law for that reason also.

The conclusion thus reached is not in conflict with the opinions in Watson v. Jones, 13 Wall. 723, 20 L. Ed. 666, and Hotel Co. v. Wade, 97 U. S. 13, 24 L. Ed. 917. While before the act of 1875 the federal courts would dismiss suits for want of requisite diverse citizenship appearing upon the face of the record (Bingham v. Cabot, 3 Dall. 382, 1 L. Ed. 646; Coal Co. v. Blatchford, 11 Wall. 172, 178, 20 L. Ed. 179), yet under the old law the pleadings only were looked to, and the rights of the parties determined solely according to the position they occupied as plaintiffs or defendants in the suit (Removal Cases, 100 U. S. 457, 469, 25 L. Ed. 593), and it was not until after the passage of the act of 1875, which "imposes the duty upon the Circuit Courts of dismissing a suit at any time after it is brought if it appears that it does not really and substantially involve a controversy of which it may properly take cognizance" (Morris v. Gilmer, 129 U. S. 315, 326, 9 Sup. Ct. 289, 32 L. Ed. 690), that it was held by the Supreme Court in the Removal Cases, supra, in 1879, that under the new law the mere form of the pleadings might be put aside and the parties placed on different sides of the matter in dispute according to the facts; this rule of realignment being subsequently extended, in Pacific Co. v. Ketchum, 101 U. S. 289, 299, 25 L. Ed. 932, to original suits brought in the Circuit Courts under the first section of the act of 1875, as well as to suits removed from the state courts under the second section.

The case of Watson v. Jones was decided in 1871, four years before the act of 1875. The only objection raised to the jurisdiction

of the court was that the plaintiff had no such interest in the subject-matter of litigation as would enable him to maintain a suit, and the want of the requisite diverse citizenship of parties upon a proper realignment was not raised by plea in abatement, or otherwise suggested, or in any. manner considered by the court. In the case of Hotel v. Wade, the bill had been filed in 1873, two years before the act of 1875. The only jurisdictional question which was raised was one of equitable jurisdiction, namely, that proper parties were not named in the bill to enable the Circuit Court to decree the relief prayed for, and the want of requisite diverse citizenship upon proper realignment of the parties to vest federal jurisdiction was neither raised by plea in abatement, or otherwise, nor considered by the court. Obviously, therefore, neither of these cases has any application to the present question as to whether the requisite diversity of citizenship exists under the now well-established rule of alignment first announced by the Supreme Court at a later date in the Removal Cases and in Pacific R. R. Co. v. Ketchum.

The conclusion reached in this case is furthermore in substantial accord with that of Judge McCall in the case of Stewart v. Mitchell, supra, in which, upon a realignment of the parties, he held good a plea in abatement in a suit arising out of this same church controversy, involving the properties and use of a church known as the Greenfield Presbyterian Church, or First Cumberland Presbyterian Church, at Greenfield, Tenn.

This result, furthermore, reaches, I think, the substantial merits of this question, so far as the jurisdiction of the federal courts is concerned. There can be no doubt but that, in its broad aspect and essential features, when stripped of technicalities, the controversy arising in Tennessee out of the merger of the two churches is really and substantially a controversy between large classes of the citizens of Tennessee on opposite sides of that controversy, in reference to the beneficial interest in church properties located in the state in which the interests of nonresident members of the church are, relatively speaking, slight; and it would, I think, be an unfortunate result if, after the Supreme Court of the state has carefully determined the property interests involved in this controversy between representatives of these large classes of the citizens of the state, a nonresident member of the church, having a relatively insignificant interest in the controversy, should be permitted, under technical rules of pleading, by the alignment of parties in opposition to their real interest, to invoke the jurisdiction of the federal court in this controversy between citizens of the state, in order to reopen the controversy in this court in the hope of avoiding the effect of the decision of the Supreme Court of the state, with the result that if the federal court should take jurisdiction of the case, and should feel constrained to differ with the Supreme Court of Tennessee upon the merits of the controversy, the beneficial title to the various church properties in Tennessee involved in this general controversy would be made to depend, first, upon the accident whether a particular church contained in its membership a citizen of another state who would be willing to bring suit

in the federal court, and, next, whether such nonresident could succeed, in a race of diligence, in bringing his suit in the federal court before the resident members on the opposite side of the controversy could sue in a state court, the natural and appropriate forum in such controversies; a result destructive of that conformity to state decisions which is desirable in matters affecting title to real estate, and to that uniformity of decision which is so essential to the administration of justice, especially in the just and harmonious relationship of state and federal courts in their joint labors under our dual system of governments. As remarked by the Supreme Court in Bernards Township v. Stebbins, 109 U. S. 353, 3 Sup. Ct. 252, 27 L. Ed. 956, it has been the consistent effort of Congress and of that court to prevent the discrimination in respect to suits between citizens of the same state and suits between citizens of different states, established by the Constitution and laws of the United States, from being evaded by bringing into the federal courts controversies between citizens of the same state. Shreveport v. Cole, 129 U. S. 36, 44, 9 Sup. Ct. 210, 32 L. Ed. 589; Anderson v. Watt, 138 U. S. 694, 701, 11 Sup. Ct. 449, 34 L. Ed. 1078. This evasion should be prevented wherever possible, not merely in the letter, but in the spirit.

An order will accordingly be entered allowing the plea in abatement, and, in consequence, denying the motion for an injunction; without consideration of the merits. 1 Beach, Mod. Eq. Pract. p. 348, § 327.

### Stephens et al. v. Smartt et al.

This case presents essentially the same question as that in Finley v. Williams et al. This suit involves the controversy in reference to the properties of the same defendant church. The bill is filed by Stephens, a citizen of the Republic of Mexico, and Morrison, a citizen of California, who allege that they are members in good standing in said church, against substantially the same defendants, including the defendants Smartt and others, alleged to be the directors and elders of the church, and the defendants Seagle and others, alleged to be claiming to be such elders. The essential averments in this bill are similar to those in the Finley bill, except that by an amendment to the bill it is expressly stated to be brought for the use and benefit of complainants and all other members of the defendant church who adhere to and assert the validity of the merger of the church, except those who are named defendants as elders and trustees. The plea in abatement of the defendants Seagle and others is in all essential respects similar to that in the Finley Case. I do not think that the fact that the defendants Smartt and others are excluded from the class for whose personal benefit the suit is brought—however this might impair the validity of the bill as a proper class bill, when considered as a matter of equity pleading—changes materially the result reached in the Finley Case; and for the reasons above stated in reference to that case, except in so far as relates to the personal membership of such defendants, an order will also be entered in this case allowing the plea in abatement and denying the motion for an injunction.